777 N.W.2d 565 (2010)
279 Neb. 273
STATE of Nebraska ex rel. AMANDA M., appellee,
v.
JUSTIN T., defendant and third-party plaintiff, appellee, and
Amanda M., third-party defendant, appellant.
No. S-09-138.
Supreme Court of Nebraska.
January 22, 2010.
*567 D. Brandon Brinegar, of Ross, Schroeder & George, L.L.C., for appellant.
Jack W. Besse, of Knapp, Fangmeyer, Aschwege, Besse & Marsh, P.C., for appellee, Justin T.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

NATURE OF THE CASE
MILLER-LERMAN, J.
In this paternity action subject to the Parenting Act, the district court for Buffalo County awarded the appellant, Amanda M., and the appellee, Justin T., joint legal and physical custody of their minor child, Cloe T. Neither parent sought imposition of joint custody. At issue in this case is whether the trial court, in a paternity case, can properly award joint legal and physical custody of a minor child where neither parent has requested joint custody, without first holding an evidentiary hearing specifically on the issue of joint custody, Amanda, who sought sole custody, appeals. We conclude that the joint custody order was error, and we reverse the district court's judgment and remand the cause for further proceedings.

STATEMENT OF THE FACTS
Amanda and Justin are the parents of Cloe. The parents were in a relationship for approximately 2 years. Their relationship ended when Cloe was around 9 months old. Amanda also has two other children. Prior to the relationship's end, Justin contends, he spent significant time with Cloe and Amanda's other children.
Since Cloe's birth, Amanda has been Cloe's primary caregiver. After the parents separated, Justin had weekly visitation with Cloe, which visits were supervised by Amanda.
Because Amanda is receiving state assistance, on August 26, 2008, the State of Nebraska filed a complaint under Neb. Rev. Stat. §§ 43-1401 through 43-1408 (Reissue 2008) to establish paternity and seek child support on behalf of Amanda and against Justin.
In response, Justin filed an answer and third-party complaint, seeking additional visitation with Cloe and adding Amanda as a third-party defendant. Justin did not seek sole or joint legal or physical custody of Cloe. Amanda responded to Justin's answer and also filed a cross-claim seeking sole custody of Cloe and the court's permission to remove Cloe from Nebraska so that Amanda could attend nursing school in Texas. Justin objected to the request for removal. Amanda argued that the move was necessary because in Nebraska, there is a 2-year waiting list for the nursing program she intends to pursue.
The trial court held a hearing over the course of 2 days. In a journal entry filed on January 8, 2009, the court awarded the parties joint physical and legal custody, granted Amanda permission to remove *568 Cloe from Nebraska upon the condition that she first demonstrate to the court that she is enrolled in an educational program in Texas, directed Amanda to return Cloe to Nebraska upon completion of the educational program in Texas, established a visitation schedule to be in effect prior to Amanda's move to Texas, established a visitation schedule to be in effect after Amanda's return from Texas, ordered Justin to pay child support, and ordered Justin to reimburse Amanda for a portion of the daycare and health care expenses that she pays. Amanda appeals from this order.

ASSIGNMENTS OF ERROR
Amanda claims, inter alia, that the trial court erred in (1) awarding joint legal and physical custody of Cloe without making a specific finding that joint legal and physical custody was in Cloe's best interests and (2) awarding joint legal and physical custody when neither party sought or agreed upon joint custody, in violation of Amanda's right to due process. Because our resolution of these assignments of error results in further proceedings in this case, we do not address additional assignments of error claimed by Amanda.

STANDARDS OF REVIEW
When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court. Allen v. Immanuel Med. Ctr., 278 Neb. 41, 767 N.W.2d 502 (2009). Statutory interpretation is a question of law. Id.

ANALYSIS

The Parenting Act Does Not Require the Trial Court to Make a Specific Finding That Joint Custody Is in the Best Interests of the Child.
Our analysis of Amanda's first assignment of error requires us to explain the interplay between the Parenting Act found in chapter 43 of the Nebraska Revised Statutes and the dissolution of marriage statutes found in chapter 42 as these acts apply to the issues in this case. In its order, the trial court awarded the parties joint legal and physical custody but did not make a specific finding that this arrangement was in Cloe's best interests.
For her first assignment of error, Amanda relies on Neb.Rev.Stat. § 42-364 (Reissue 2008), regarding custody in the context of marital dissolution, and claims that the trial court erred in ordering joint legal and physical custody in the absence of an explicit finding that joint legal and physical custody was in Cloe's best interests. Section 42-364 of the dissolution of marriage statutes requires that in dissolution cases, if the parties do not agree to joint custody in a parenting plan, the trial court can award joint custody if it specifically finds that it is in the best interests of the child or children.
Justin responds by arguing that because chapter 42 governs cases of marital dissolution, and this is an action under chapter 43 to establish paternity under the Parenting Act, the requirement in § 42-364 that a court make a specific finding of best interests before awarding joint custody is inapplicable. Although the preferred practice is for a court to declare the best interests of the child in custody decisions, given the plain language of the Parenting Act, we agree with Justin that the district court did not err when it did not make a specific finding of best interests in this case.
As an initial matter, we must determine whether the Parenting Act controls this case. We conclude that it does. Neb.Rev.Stat. § 43-2924 (Reissue 2008) of the Parenting Act provides:

*569 (1) The Parenting Act shall apply to proceedings or modifications filed on or after January 1, 2008, in which parenting functions for a child are at issue (a) under Chapter 42, including, but not limited to, proceedings or modification of orders for dissolution of marriage and child custody and (b) under sections 43-1401 to 43-1418....
(2) The Parenting Act does not apply in any action filed by a county attorney or authorized attorney pursuant to his or her duties under section 42-358, 43-512 to 43-512.18, or 43-1401 to 43-1418, the Income Withholding for Child Support Act, the Revised Uniform Reciprocal Enforcement of Support Act before January 1, 1994, or the Uniform Interstate Family Support Act for purposes of the establishment of paternity and the establishment and enforcement of child and medical support.... If both parents are parties to a paternity or support action filed by a county attorney or authorized attorney, the parents may proceed with a parenting plan.
The proceedings in this case were initiated by a complaint filed by the State pursuant to §§ 43-1401 through 43-1408, which allow recovery of child support for a child born out of wedlock when paternity of the child's father is established. Under § 43-2924(2), quoted above, such proceedings for establishing paternity are excluded from the Parenting Act unless certain conditions are met. Those conditions were met in this case.
In his answer to the complaint, Justin requested increased visitation and brought Amanda into the action as a third-party defendant. Amanda responded and sought sole custody. Joinder was allowed. Both parents became parties to the action, see § 43-2924(2), and the proceeding became one in which custody and parenting functions were at issue under § 43-1401. The Parenting Act applies, see § 43-2924(1), and subjects the parents to a parenting plan, see § 43-2924(2).
Having determined that the Parenting Act governs this case, we now turn to the requirements that the Parenting Act imposes on the trial court with respect to issues relative to parenting functions. Neb.Rev.Stat. § 43-2929 (Reissue 2008) lists the numerous issues which the parenting plan must resolve. For purposes of the instant case, we limit our discussion to the issues of custody. In this regard, § 43-2929 states:
(1) ... When a parenting plan has not been developed and submitted to the court, the court shall create the parenting plan in accordance with the Parenting Act. A parenting plan shall serve the best interests of the child pursuant to sections 42-364 and 43-2923 and shall:
(a) Assist in developing a restructured family that serves the best interests of the child by accomplishing the parenting functions; and
(b) Include, but not be limited to, determinations of the following:
(i) Legal custody and physical custody of each child;
Appellate courts give statutory language its plain and ordinary meaning and will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. Rohde v. City of Ogallala, 273 Neb. 689, 731 N.W.2d 898 (2007).
In this case, the parents acknowledge that no parenting plan was presented to the court. Thus, based on the language of § 43-2929 and given the fact that custody became an issue in this case, the trial court was required to develop a parenting plan which "shall serve the best interests of the child." See § 43-2929(1). In developing a parenting plan, the trial court was *570 required to determine, inter alia, the "[l]egal custody and physical custody" of Cloe. See § 43-2929(1)(b)(i). See, also, Bhuller v. Bhuller, 17 Neb.App. 607, 767 N.W.2d 813 (2009) (holding, in dissolution action subject to Parenting Act, that when trial court did not resolve visitation issues as required under § 43-2929, order was not final, appealable order).
In requiring the creation of a parenting plan, § 43-2929(1) states that the parenting plan "shall serve the best interests of the child pursuant to sections 42-364 and 43-2923." Section 42-364 of the dissolution of marriage statutes does not explicitly list factors to consider when determining best interests, but, instead, refers to Neb.Rev.Stat. § 43-2923 (Reissue 2008), which does list the best interests factors. Section 43-2923 provides:
The best interests of the child require:
(1) A parenting arrangement and parenting plan or other court-ordered arrangement which provides for a child's safety, emotional growth, health, stability, and physical care and regular and continuous school attendance and progress for school-age children;
(2) When a preponderance of the evidence indicates domestic intimate partner abuse, a parenting and visitation arrangement that provides for the safety of a victim parent;
(3) That the child's families and those serving in parenting roles remain appropriately active and involved in parenting with safe, appropriate, continuing quality contact between children and their families when they have shown the ability to act in the best interests of the child and have shared in the responsibilities of raising the child;
(4) That even when parents have voluntarily negotiated or mutually mediated and agreed upon a parenting plan, the court shall determine whether it is in the best interests of the child for parents to maintain continued communications with each other and to make joint decisions in performing [such] parenting functions as are necessary for the care and healthy development of the child. If the court rejects a parenting plan, the court shall provide written findings as to why the parenting plan is not in the best interests of the child; and
(5) That certain principles provide a basis upon which education of parents is delivered and upon which negotiation and mediation of parenting plans are conducted. Such principles shall include: To minimize the potentially negative impact of parental conflict on children; to provide parents the tools they need to reach parenting decisions that are in the best interests of a child; to provide alternative dispute resolution or specialized alternative dispute resolution options that are less adversarial for the child and the family; to ensure that the child's voice is heard and considered in parenting decisions; to maximize the safety of family members through the justice process; and, in cases of domestic intimate partner abuse or child abuse or neglect, to incorporate the principles of victim safety and sensitivity, offender accountability, and community safety in parenting plan decisions.
We take the foregoing statutory requirements together and apply them to this paternity case involving a custody issue where no parenting plan was submitted. Although we disapprove of the joint custody order, as discussed below, we conclude that the trial court correctly developed a parenting plan which was intended to serve the best interests of Cloe and included a custody provision. In developing the parenting plan, the trial court was required to consider the best interests factors *571 listed in § 43-2923. In contrast to the language of § 42-364 of the dissolution of marriage statutes, the Parenting Act does not explicitly require that the court make a specific finding that joint custody is in the best interests of the child when ordering joint custody in a paternity case.
In this case, the parenting plan created by the court followed the criteria set forth by the Legislature and there is no evidence or argument that the best interests of Cloe did not guide the trial court's decision in its award of custody. Although it is preferable to make a finding that the best interests of the child dictate the result, it is not error under the Parenting Act in a paternity case to fail to make a specific finding of best interests. Thus, although we find error with respect to the joint custody order for due process reasons explained below, we conclude that Amanda's first argument, claiming that the trial court erred when it did not make a specific finding that joint custody was in the best interests of Cloe, is without merit.

Due Process Requires That When Neither Party Has Requested Joint Custody, the Trial Court Shall Hold a Hearing Before Awarding Joint Custody.
For her second assignment of error, Amanda claims that the trial court violated her right to due process of law by awarding joint custody without first holding a hearing on the issue.
In response, Justin argues that the trial court was not required to hold a hearing on the matter of joint custody. Justin reasons that the language in the Parenting Act which instructs the trial court to create a parenting plan including a custody determination, in the absence of a plan's being presented to the court, is sufficient notice that joint custody may be awarded after the hearing on the initial pleadings.
We do not agree with Justin's analysis and instead conclude that before awarding parents joint custody of a minor child, due process requires that the trial court hold a hearing on the issue. Because the court failed to do so, the joint custody determination was error, and we reverse, and remand for further proceedings.
In considering Amanda's second assignment of error, we again turn to the language of the Parenting Act. Section 43-2929(1) states that a parenting plan "shall serve the best interests of the child pursuant to sections 42-364 and 43-2923." Because the language of § 43-2929 states that the best interests of the child shall be considered under both §§ 42-364 and 43-2923, we conclude that our due process jurisprudence regarding joint custody under § 42-364 is incorporated into parenting plan orders entered under the Parenting Act. Accordingly, we refer to our decision in Zahl v. Zahl, 273 Neb. 1043, 736 N.W.2d 365 (2007), decided under § 42-364, for guidance in this case.
In Zahl, both parents in a marital dissolution action sought sole custody of the minor child. After holding a general custody hearing, the court awarded the parties joint legal and physical custody. The father appealed, arguing that the court was required to hold an evidentiary hearing directed to the issue of joint custody before awarding joint custody. We agreed with the father. We held that when a court has determined that joint physical custody is, or may be, in a child's best interests but neither party has requested joint custody, the court must give the parties an opportunity to present evidence on the issue before imposing joint custody. Id.
In considering the father's argument in Zahl, we observed that

*572 [g]enerally, procedural due process requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.
273 Neb. at 1052, 736 N.W.2d at 373.
In determining that the parties in Zahl had not received adequate due process, we noted that joint physical custody must be reserved for cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction and will provide a stable atmosphere for the child to adjust to, rather than perpetuating turmoil or custodial wars. Id. Therefore, because the factual inquiry for awarding joint custody was substantially different from that for an award of sole custody, without notice that joint custody would be considered, the parties in Zahl did not receive adequate due process in preparing for the hearing on custody and were entitled to a new hearing. Id.
Based on the principles established in Zahl, we conclude that in a paternity case subject to the Parenting Act where neither party has requested joint custody, if the court determines that joint custody is, or may be, in the best interests of the child, the court shall give the parties notice and an opportunity to be heard by holding an evidentiary hearing on the issue of joint custody.
In this case, the hearing held by the trial court did not satisfy the requirements of due process. Prior to the hearing, based on the pleadings, Justin had merely sought increased visitation with Cloe and Amanda had sought sole custody. Neither parent had requested joint custody. Therefore, the evidence the parties presented, or were prepared to present, at the trial was substantially different from the evidence that would be used to advocate or contest a ruling of joint custody.
Because the court failed to hold a hearing that satisfied the requirements of due process, the trial court's award of joint custody was error. Accordingly, we reverse the district court's judgment and remand the cause for further proceedings.

CONCLUSION
This case is subject to the Parenting Act. Because the parents in this paternity case where custody was an issue did not present the trial court with a parenting plan, the court did not err by creating a parenting plan, which included a determination regarding the custody of the child. Under the plain language of the Parenting Act, the court in a paternity case is not required to make a specific finding that joint custody, if properly awarded, is in the best interests of the minor child. On a record such as this, where neither party has requested joint custody, if the court determines that joint custody, is, or may be, in the best interests of the child, due process requires that the court hold a hearing on the matter before entering an order awarding joint custody under the Parenting Act. The district court failed to hold a hearing, and the joint custody order was error. Therefore, the district court's judgment is reversed and the cause is *573 remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.