IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

MCIVER V. MCIVER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

AMY MCIVER, APPELLEE,
V.
KEVIN MCIVER, APPELLANT.

Filed October 1, 2013.    No. A-13-052.

Appeal from the District Court for Douglas County: LEIGH ANN RETELSDORF, Judge. Affirmed as modified.

Jerrad R. Ahrens, of Cordell & Cordell, P.C., for appellant.

Virginia A. Albers, of Lieben, Whitted, Houghton, Slowiaczek & Cavanagh, P.C., L.L.O., for appellee.

MOORE, PIRTLE, and BISHOP, Judges.

MOORE, Judge.

Kevin McIver appeals from the decree of dissolution entered by the district court for Douglas County, and Amy McIver cross-appeals. At issue in this appeal are the district court's award of sole legal custody of the parties' minor children to Amy and joint physical custody to both parties, the parties' holiday parenting time, and the property division. For the reasons set forth below, we affirm the district court's decree as modified by this opinion.

I. FACTUAL BACKGROUND

Kevin and Amy were married in Columbia, South Carolina, on June 20, 1998. After the marriage, Amy and Kevin lived in North Carolina and began a family. Three children were born of this marriage: a daughter born in 2002, a son born in 2003, and another son born in 2007. When Kevin accepted a new job in 2007, the family moved from Asheboro, North Carolina, to Omaha, Nebraska. At the time of trial, the children were 10, 8, and 5 years old, respectively, and were all in school.

On October 14, 2011, Amy filed a complaint for dissolution of marriage. In her complaint, Amy sought to be awarded primary physical custody of the children, but was willing to share legal custody with Kevin. Kevin filed an answer and counterclaim to Amy's complaint, requesting joint physical and legal custody of the children.

The district court entered a temporary order on December 29, 2011, granting Kevin and Amy joint legal custody of their three children, with Amy appointed as the physical custodian. Kevin was awarded overnight parenting time on one weekday night and every other weekend. The district court also gave Amy exclusive occupancy of the marital home and ordered Kevin to pay monthly child and spousal support in the respective amounts of $1,920 and $1,000.

Trial was held on September 24, 2012. The parties had entered into a partial parenting agreement through mediation before trial, but the issues of legal custody, division of parenting time, and the conclusion time for holiday visitation remained to be resolved. The parties also disagreed as to the amount of spousal support and to valuations of certain personal and real property. Both parties submitted evidence regarding these issues.

Kevin was 39 years old at the time of trial and was employed as a senior engineer at an energy company. Following the birth of the parties' first child, Kevin was the sole source of income for the family. Because his job often required him to travel from Omaha to the company plant in Lexington, Nebraska, Kevin was away from home a few days each week. At trial, however, Kevin testified that his schedule would become more flexible to permit a joint custody arrangement.

At the time of trial, Amy was 38 years old. After getting married and moving to North Carolina, Amy worked as a teacher until their first child was born in 2002. Since the birth of their children until her separation from Kevin, Amy had been a stay-at-home mother. During that time, Amy arranged the children's medical care and was the primary family contact person for the children's school. Amy was responsible for the day-to-day care of the children, including purchasing their clothing and supplies.

Amy has a current Nebraska teaching certificate. Following the separation, Amy began working as a substitute teacher in the Millard and Elkhorn school districts and had been pursuing a full-time teaching position in these districts. As of trial, she had not yet been able to obtain full-time employment and was continuing to substitute teach in both districts approximately 2 to 3 days per week.

In addition to their testimony, Kevin and Amy each submitted valuations of the personal property and the marital residence. To value the marital residence, each party commissioned a professional appraisal. Kevin's appraisal concluded the home was valued at $338,000, and Amy's appraisal valued the home at $315,000. In their proposed valuations for the personal property, including the various financial accounts, each used a different date of valuation. The trial testimony reveals that each party disagreed with the other's valuations. Further evidence will be discussed regarding the property issues as necessary in the analysis below.

The district court entered its decree of dissolution on November 9, 2012. Taking into consideration the best interests of the children, the district court granted the parties joint physical custody, but awarded Amy sole legal custody. To facilitate the joint physical custody arrangement, the court developed a visitation schedule. Amy was awarded parenting time beginning at 8 a.m. on Monday and ending at 8 a.m. on Wednesday. Kevin's parenting time

starts at 8 a.m. on Wednesday and ends at 8 a.m. on Friday. The parties would also have parenting time on alternating weekends, which begins at 8 a.m. on Friday and ends at 8 a.m. on Monday. For holiday parenting time, the court adopted the holiday parenting schedule from the parties' partial parenting plan and determined that the holiday parenting time would end at 8 a.m. following the last day of the designated holiday.

Among its other rulings, the court ordered Kevin to pay alimony and child support and a portion of Amy's attorney fees. The court also awarded Amy the marital residence on the condition that she refinance the existing mortgage within 9 months of the decree and remove Kevin from any obligation relating to the residence or, in the alternative, that she list the home for sale. The court made further provisions for splitting the equity in the home between the parties upon the sale or refinancing. In granting the marital residence to Amy, the court adopted Amy's appraised valuation for the home. Kevin was awarded the home that he purchased separately during the temporary separation period. To divide the parties' personal property, including bank and retirement accounts, the court used January 31, 2012, as the valuation date. After dividing the marital estate, the court ordered Kevin to pay Amy an equalization payment totaling $69,579.

Kevin appeals from this decree, and Amy cross-appeals.

## II. ASSIGNMENTS OF ERROR

Kevin assigns and argues four errors in his brief. He asserts, restated, that the district court erred by (1) awarding Amy sole legal custody of the minor children, (2) awarding Amy parenting time every Thanksgiving and Christmas Eve and Christmas Day, (3) ordering Kevin to pay Amy an equalization payment in the amount of $69,579, and (4) accepting Amy's values for the parties' marital residence and personal property.

On cross-appeal, Amy argues that the district court erred when it awarded Kevin joint physical custody of the minor children.

## III. STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determination of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of discretion. *Keig v. Keig*, 20 Neb. App. 362, 826 N.W.2d 879 (2012). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or its action is clearly against justice or conscience, reason, and evidence. *Id*.

## IV. ANALYSIS

### 1. KEVIN'S APPEAL

### (a) Legal Custody of Children

Although the district court determined the parties should have joint physical custody of the minor children, it awarded Amy sole legal custody. Kevin argues that there was sufficient evidence to show that awarding the parties joint legal custody would be in the best interests of the children.

When custody of minor children is an issue in a proceeding to dissolve the marriage of the children's parents, custody is determined by parental fitness and the children's best interests. *Klimek v. Klimek*, 18 Neb. App. 82, 775 N.W.2d 444 (2009). The best interests of a child require a parenting arrangement "for a child's safety, emotional growth, health, stability, and physical care and regular and continuous school attendance and progress." Neb. Rev. Stat. § 43-2923(1) (Cum. Supp. 2012). Section 43-2923(6) further provides:

In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors and:

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member . . . ; and

(e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

The district court is also guided by Neb. Rev. Stat. § 42-364(3) (Cum. Supp. 2012) when determining a child custody award. This section provides:

Custody of a minor child may be placed with both parents on a joint legal custody or joint physical custody basis, or both, (a) when both parents agree to such an arrangement in the parenting plan and the court determines that such an arrangement is in the best interests of the child or (b) if the court specifically finds, after a hearing in open court, that joint physical custody or joint legal custody, or both, is in the best interests of the minor child regardless of any parental agreement or consent.

"Joint legal custody" is defined as "mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health." Neb. Rev. Stat. § 43-2922(11) (Cum. Supp. 2012).

The district court found that both Amy and Kevin were fit persons capable of having the permanent care, custody, and control of the children, but found that the best interests of the minor children required that Amy have sole legal custody. The court noted that the traditional division of responsibilities during the marriage, Kevin's struggle during his parenting time to ensure the children's timely arrival at school, and the potential for communication problems necessitated this arrangement.

Kevin does not challenge the district court's conclusion that Amy is a fit parent. Rather, Kevin asserts that there is sufficient evidence he is capable of exercising joint legal custody and that it would be in the best interests of the children. Kevin claims there was no evidence that he has made poor decisions regarding the children and points to the care that he has given to the children during his parenting time since the parties' separation to support this claim. At trial, Kevin agreed that during the marriage, he relied on Amy to take care of the children's health,

education, and daily needs, but contended that this was due to their arrangement that he would work to provide income and Amy would be a stay-at-home mother. Kevin asserts that the parties had a history of discussing decisions regarding the children. Kevin argues that the family dynamics have now changed with all of the children being in school and Amy returning to work such that it would be best for the children to have both parties be involved in the decisionmaking process. Kevin conceded that since the separation, the children arrived late to school on days when he was responsible for transporting them. However, he claimed that they were only late a few minutes and had arrived before classroom instruction began taking place. Finally, Kevin argues that the parties have not had any communication problems or major disagreements regarding decisions for the children such that it was an abuse of discretion by the district court to use potential communication issues as a reason to deny joint legal custody.

Amy testified that she initially thought the parties could share legal custody but that she changed her mind approximately 4 months after the parties' separation. At that time, she concluded that they could not share legal custody effectively. Amy pointed to Kevin's disagreement over the daycare arrangements she made for the children before and after school, his unwillingness to suggest an alternative, and his reluctance and delay in paying for his portion of the daycare expense during the temporary period. Amy also asserts she has been the parent who arranges the children's medical appointments, and she is the primary liaison between the family and the children's school.

Our review of the record leads us to conclude that the district court did not abuse its discretion when it awarded Amy sole legal custody of the minor children. In reaching this conclusion, we note that § 42-364(3) does not require a court to order both joint legal and joint physical custody, but, rather, contemplates that a court may order one or the other, or both. We further note that Kevin retains the right to make decisions regarding the day-to-day care of the children while he is exercising his parenting time as provided in the parenting plan adopted by the district court. This assigned error is without merit.

(b) Thanksgiving and Christmas
Parenting Time

Kevin argues that the holiday parenting schedule is unreasonable because it does not grant him parenting time on Thanksgiving Day, Christmas Eve, or Christmas Day. He contends that such a holiday schedule is not in the children's best interests and that no evidence was presented at trial to establish the reasonableness of this schedule.

Our review of the record reveals that Kevin and Amy mediated a partial parenting plan before trial and had agreed upon a schedule for the Thanksgiving and Christmas holidays. This plan was approved by the conciliation court and filed in the district court on May 2, 2012, and it was also received into evidence. According to the plan's schedule, the Thanksgiving holiday would have two parts: (1) part one begins the Friday prior to Thanksgiving at 5 p.m. and ends the Wednesday prior to Thanksgiving at 6 p.m. and (2) part two begins Wednesday prior to Thanksgiving at 6 p.m. with the court determining the end time. Amy and Kevin also agreed to divide the Christmas holiday into two parts: (1) part one begins on the day of school dismissal for Christmas break at 5 p.m. and ends the day after Christmas at 9 a.m. and (2) part two begins December 26 at 9 a.m. and ends December 31 at 9 a.m. Amy and Kevin agreed that Kevin would

have parenting time during part one of Thanksgiving and part two of Christmas every year while Amy would have part two of Thanksgiving and part one of Christmas. The only matter not agreed to by the parties was the end time for the holiday visitation.

Despite having agreed upon a holiday schedule at mediation, Kevin submitted his own "parenting plan proposal" at trial which deviated from the mediated plan. Kevin's plan maintained the two-part holiday division from the mediated plan, but proposed that the parties alternate yearly between the two parts of each holiday. On cross-examination, Kevin admitted that his plan deviated from the mediated plan, but he did not otherwise explain why his plan should be adopted.

In its decree, the court adopted the holiday schedule from the parties' mediated parenting plan. The court also determined that all holidays without an established end time would end at 8 o'clock the morning after the last day of the holiday. Because the court adopted the holiday schedule from the parties' mediated parenting plan, and Kevin did not testify as to why such plan should not be adopted, we find no abuse of discretion in the determination of the Thanksgiving and Christmas holiday schedule. This assigned error is without merit.

### (c) Equalization Payment

Kevin also claims the district court abused its discretion when it ordered him to pay Amy an equalization payment in the amount of $69,579 within 30 days of the decree. Kevin contends the district court improperly valued a certain account, a "Fidelity Traditional IRA" (Fidelity IRA), which he claims led to certain funds being counted twice. Kevin also argues that having to make this payment within 30 days creates an undue hardship.

Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012). Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness determined by the facts of the case. *Pohlmann v. Pohlmann*, 20 Neb. App. 290, 829 N.W.2d 63 (2012).

Kevin's argument relates to the second step of the property division process. Specifically, Kevin argues that despite the district court ruling that the marital estate would be valued as of January 31, 2012, or as closely as possible, it did not adhere to that date. In the decree, the district court found that even though the Fidelity IRA had a $0 balance as of January 20, 2012, it should not be valued on that date. The court noted that this account contained $27,272 in October 2011 and $28,612 on September 13, 2012. The court also found that Kevin had used the account for the downpayment for his purchase of a new house and had later replenished the account with a personal loan. Taking the account activity into consideration, the court valued the account at $28,612 when it divided the marital estate. The court further awarded Kevin sole possession of the home he purchased and any equity in that home.

At trial, Kevin attempted to explain the fluctuation in the Fidelity IRA and the corresponding activity in his "ING" accounts. Kevin's testimony and a careful review of the

account exhibits offered by Amy show that on January 18, 2012, Kevin transferred the sum of $27,823.01 from the Fidelity IRA to the ING checking account. On the same day, Kevin transferred $13,934.30 from the ING checking account to the ING loan account to fully satisfy the parties' line of credit. On January 20, Kevin transferred $14,000 from the ING checking account to the ING savings account. In February 2012, Kevin used funds in the ING savings account to make a downpayment on his new house in the sum of $14,501.27. Kevin also explained that he acquired a $30,000 personal loan in March 2012 to replenish the Fidelity IRA.

We agree with Kevin that the district court did not use the account balances as of January 31, 2012 (or as close thereto as possible), on the Fidelity IRA and ING accounts and that its valuations contained some duplication. Based upon our careful review of the record, we determine that the account balances of the pertinent accounts should be as follows:

| Account | Decree | Actual |
|---|---|---|
| Fidelity IRA | $28,612 | $ 0.00 |
| ING checking | 16,102 | 664.08 |
| ING loan | ( 5,536) | 0.00 |
| ING loan payoff | | 13,934.30 |
| ING savings | | 14,511.81 |
| TOTAL | $39,187 | $29,110.19 |

Thus, we find that the district overvalued the accounts awarded to Kevin by $10,076.81, which we round to $10,077. Given that the district court equalized the marital estate on a 50/50 basis in the decree, we accordingly modify Kevin's net marital estate valuation from $221,259 to $211,182. We further modify the equalization payment from $69,260 to $64,222.

Kevin also argues that the district court abused its discretion by requiring him to pay the property judgment within 30 days while delaying payment of his portion of the equity in the marital home by up to 9 months. Kevin asserts that this creates an undue hardship on him. However, Kevin did not adduce any evidence at trial to support this argument or provide any further explanation beyond what is stated above. Kevin's argument is merely a reformulation of the assigned error and, therefore, does not constitute the required argument in support of the assigned error. See *Genthon v. Kratville*, 270 Neb. 74, 701 N.W.2d 334 (2005). This argument is without merit.

(d) Valuation of Marital Residence
and Personal Property

In his final assignment of error, Kevin argues that the district court erred when it adopted Amy's proposed values for the marital residence and personal property. Kevin claims that the court's decision was improper because it did not sufficiently explain its reasoning for adopting Amy's proposed values instead of his submitted values.

At trial, Kevin and Amy both produced professionally conducted appraisals of the marital home. Kevin's appraisal concluded the home should be valued at $338,000, and Amy's appraisal valued the home at $315,000. Neither appraiser testified at trial, but Amy questioned the accuracy of Kevin's appraisal during her testimony, specifically with regard to the comparable sales used in the appraisal. In addition to her appraisal, Amy also produced a letter notification from the Douglas County Board of Equalization that the residence was valued at $292,000 as of

August 7, 2012. This determination followed the parties' protest of the initial valuation at $325,500.

In its decree, the district court adopted $315,000 as the value of the marital residence. Based on our review of the evidence, the court's adopted value is clearly reasonable and cannot be considered an abuse of discretion.

We also conclude that the district court's decision to adopt Amy's valuations of the parties' personal property was not an abuse of discretion. Specifically, the district court valued Amy's personal property at $6,790 and Kevin's at $2,250. Amy testified that her valuations were based upon garage sale and "craigslist" prices. In his brief, Kevin argues that in adopting these values, the district court created an unfair result. However, other than submitting an exhibit with opposing valuations for the personal property, Kevin did not produce any evidence to establish the validity of his valuations or to contradict Amy's valuations. When faced with deciding between these two opposing valuations, we cannot say the district court erred when adopting Amy's valuations. This assigned error is without merit.

## 2. AMY'S CROSS-APPEAL

In her cross-appeal, Amy asserts that the district court abused its discretion in awarding the parties joint physical custody. Amy claims that joint physical custody cannot be effectively combined with sole legal custody. She reiterates that she has been the primary caregiver for the children during the marriage and claims the history of this family dictates that she should be awarded sole physical custody of the children subject to Kevin's liberal visitation.

As stated above, § 42-364(3) allows the trial court to award joint physical custody in dissolution cases, even if the parties do not agree to joint custody in a parenting plan, if it specifically finds, after a hearing in open court, that it is in the best interests of the children. The statute contemplates that a court may order joint legal custody, joint physical custody, or both; but it does not require a court to order both joint legal and joint physical custody, or preclude ordering joint physical custody without joint legal custody. "Joint physical custody" is defined as "mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by both parents over the child for significant periods of time." § 43-2922(12). A district court abuses its discretion in ordering joint custody when it fails to specifically find that joint physical custody is in the child's best interests as required by § 42-364. See, *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007); *Hill v. Hill*, 20 Neb. App. 528, 827 N.W.2d 304 (2013).

In this case, Kevin sought joint physical custody and both parties were aware at trial that the court was considering joint custody. Both parties testified to their preference of a schedule in the event the court ordered joint physical custody, although Amy maintained her belief that joint physical custody was not in the children's best interests. In the dissolution decree, the court specifically found that a joint physical custody arrangement was in the children's best interests and it utilized the schedule proposed by Amy.

Nebraska has not yet recognized a presumption in favor of joint custody, and joint custody remains disfavored to the extent that if both parties do not agree, the court can award joint custody only if it holds a hearing and makes the required finding. See *Zahl v. Zahl, supra*. In *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009), the Nebraska Supreme Court

discussed the interplay between § 43-364(3) and § 43-2923 of the Parenting Act, and found that in essence, the statutes require the district court to devise a parenting plan and to consider joint legal and physical custody. However, the statutes "do not *require* the district court to grant equal parenting time or joint custody to the parents if such is not in the child's best interests." *Kamal v. Imroz*, 277 Neb. at 121, 759 N.W.2d at 918 (emphasis in original).

Most appellate decisions reversing an award of joint physical custody involve a finding that joint physical custody was not requested by either party or the failure of the trial court to provide notice, a hearing, or make a finding that joint physical custody was in the best interests of the child or children. See, e.g., *State ex rel. Amanda M. v. Justin T.*, 279 Neb. 273, 777 N.W.2d 565 (2010); *Zahl v. Zahl, supra*; *Hill v. Hill, supra*.

In the present case, we are called upon to determine only whether the district court abused its discretion in finding that joint physical custody was in the best interests of these children. After reviewing the record, we cannot say that an abuse of discretion occurred. Both parents clearly love their children and have good relationships with them. The parties live within 10 miles of each other in the Omaha area. While Amy has historically been the traditional primary caregiver, the family circumstances have changed in that Amy is pursuing full-time employment as a teacher and the children are now all of school age. Kevin testified that he will have more flexibility in his work-related travels such that he can be home to care for the children on an alternating basis. No evidence was adduced to suggest that an alternating parenting schedule would be detrimental to the children. On this record, we cannot say that the district court abused its discretion in finding that the children's best interests will be served by the award of joint physical custody.

## V. CONCLUSION

We find that the district court did not abuse its discretion when awarding custody of the minor children. Nor did the district court abuse its discretion when adopting the parties' mediated holiday schedule or Amy's proposed property values. However, the district court did not properly value certain accounts which led to an error in dividing the marital estate. We have modified the decree to correct this error. Accordingly, we affirm the district court's decree as modified.

AFFIRMED AS MODIFIED.