[12] Because we have found that the juvenile court erred in terminating Ricardo's parental rights, we do not address whether termination was in Gabriella's best interests. An appellate court is not obligated to engage in an analysis which is not necessary to adjudicate the case and controversy before it. *In re Interest of Josiah T., supra.*

## CONCLUSION

Upon our de novo review of the record, we conclude that the juvenile court erred in terminating Ricardo's parental rights to Gabriella because the State failed to adduce clear and convincing evidence of abandonment under § 43-292(1). Accordingly, we reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

JOSE AGUILAR, APPELLEE, V.
RACHEL SCHULTE, APPELLANT.
___ N.W.2d ___

Filed June 10, 2014.    No. A-13-541.

1. **Child Custody.** The requirement in Neb. Rev. Stat. § 42-364 (Cum. Supp. 2012) that a court make a specific finding of best interests before awarding joint custody of a child is inapplicable when the parents were never married.
2. **Child Custody: Due Process.** The due process jurisprudence regarding joint custody under Neb. Rev. Stat. § 42-364 (Cum. Supp. 2012) is incorporated into parenting plan orders entered under the Parenting Act found in chapter 43 of the Nebraska Revised Statutes.
3. **Child Custody.** When a court has determined that joint physical custody is, or may be, in a child's best interests but neither party has requested joint custody, the court must give the parties an opportunity to present evidence on the issue before imposing joint custody.
4. **Child Custody: Due Process: Notice.** Without notice that joint custody will be considered, parties do not receive adequate due process in preparing for the custody hearing.
5. **Paternity: Parental Rights: Child Custody: Notice.** In a paternity case subject to the Parenting Act where neither party has requested joint custody, if the court determines that joint physical custody is, or may be, in the best interests of the child, the court shall give the parties notice and an opportunity to be heard by holding an evidentiary hearing on the issue of joint custody.

6. **Child Custody.** The factual inquiry necessary to impose joint physical custody is substantially different from that required for making a sole custody determination.

7. **Child Custody: Evidence.** The focus of evidence necessary for a determination of joint custody focuses on the parents' ability to communicate with each other and resolve issues together.

8. **Visitation.** A court determines the nature and extent of visitation rights on a case-by-case basis and may consider many factors and circumstances in each individual case, such as the age and health of the child, the character of the noncustodial parent, the place where visitation rights will be exercised, the frequency and duration of visits, the emotional relationship between the visiting parent and the child, the likely effect of visitation on the child, the availability of the child for visitation, the likelihood of disrupting an established lifestyle otherwise beneficial to the child, and, when appropriate, the wishes of the child.

9. ____. Although limits on visitation are an extreme measure, they may be warranted where they are in the best interests of the children.

10. ____. Allowing a child time with grandparents is in the child's best interests.

11. **Courts.** A court does not err in requiring one party to execute documents to comply with the court's order.

12. **Judgments: Final Orders.** Conditional judgments are ineffective and void.

13. **Pretrial Procedure.** Generally, the effect of a pretrial order is to control the subsequent course of the action.

14. ____. Litigants must adhere to the spirit of the pretrial procedure and are bound by a pretrial order to which no exception has been taken.

Appeal from the District Court for Douglas County: Thomas A. Otepka, Judge. Affirmed.

James Walter Crampton for appellant.

Catherine Mahern, Nathaniel Romano, and Kathleen Kennedy, Jayne Wagner, and Ajla Aljic, Senior Certified Law Students, of Milton R. Abrahams Legal Clinic, for appellee.

Irwin, Riedmann, and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

Rachel Schulte appeals from the order of the Douglas County District Court awarding her and Jose Aguilar joint physical custody of their minor child and allowing Aguilar to travel out of the country with the child. We find no abuse of discretion by the district court and therefore affirm the court's order.

## BACKGROUND

Aguilar and Schulte are the biological parents of a son, born in 2009. The parties never married, but Aguilar's paternity of the child was established by the court in December 2009, and he was ordered to pay child support. On March 24, 2010, Aguilar filed a complaint in the district court requesting joint custody of the minor child and reasonable parenting time. The district court entered a temporary order granting the parties joint legal custody and awarding primary physical custody of the child to Schulte, subject to Aguilar's parenting time.

Through mediation, the parties were able to agree on a partial parenting plan, including joint legal custody and holiday parenting time, but they were unable to agree on physical custody, weekday parenting time, or vacation time. Trial was held on these issues on March 6 and 7, 2013. Thereafter, the district court entered an order finding that Aguilar and Schulte were both fit and proper parents and awarding the parties joint legal and physical custody of the minor child. The partial parenting plan agreed upon by the parties was adopted by the court. The court also allowed Aguilar to travel with the minor child to Mexico during his parenting time, and it ordered Schulte to cooperate in obtaining a passport for the child and executing any documentation necessary for the child to travel internationally. Schulte timely appeals to this court.

## ASSIGNMENTS OF ERROR

Schulte assigns that the district court erred in (1) awarding joint physical custody of the minor child, (2) ordering Schulte to cooperate in obtaining the child's passport and executing the necessary documents for the child to leave and reenter the United States, and (3) sustaining Aguilar's objection to a certified copy of an arrest warrant for his arrest.

## STANDARD OF REVIEW

Child custody determinations, and parenting time determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an

abuse of discretion. *Hill v. Hill*, 20 Neb. App. 528, 827 N.W.2d 304 (2013).

## ANALYSIS

*Joint Physical Custody.*

Schulte argues that the district court erred in awarding joint physical custody for two reasons. First, she claims the court erroneously did not make a specific finding that joint physical custody was in the child's best interests as required by Neb. Rev. Stat. § 42-364 (Cum. Supp. 2012). Additionally, she asserts that the court failed to satisfy procedural due process because neither party requested joint physical custody and the court failed to hold an evidentiary hearing on the issue. In addressing Schulte's claims, we look to *State ex rel. Amanda M. v. Justin T.*, 279 Neb. 273, 777 N.W.2d 565 (2010), for guidance.

[1] Amanda M. and Justin T. were the parents of a minor child, and pursuant to a paternity action, the district court awarded the parties joint legal and physical custody of the child. On appeal, the Nebraska Supreme Court first determined that because the parties had never married and the issues before the trial court were custody and parenting functions, the action was governed by the Parenting Act found in chapter 43 of the Nebraska Revised Statutes, as opposed to the dissolution of marriage statutes contained in chapter 42. Thus, the requirement in § 42-364 that a court make a specific finding of best interests before awarding joint custody was inapplicable. See *State ex rel. Amanda M. v. Justin T., supra*. Accordingly, the court found no error in the district court's failure to make a specific finding of best interests. See *id*.

The same is true here. Aguilar and Schulte were never married, and the action before the district court was solely to establish custody and parenting time of the minor child. Because the Parenting Act controls the present case, we reject Schulte's argument that the district court was required to make a specific finding that joint physical custody was in the minor child's best interests.

[2] In addition, we find that the issue of joint physical custody was properly before the district court based on the

language in Aguilar's complaint. In *State ex rel. Amanda M. v. Justin T., supra*, the Nebraska Supreme Court concluded that the due process jurisprudence regarding joint custody under § 42-364 is incorporated into parenting plan orders entered under the Parenting Act. As a result, whether custody and parenting time is awarded in a paternity action or dissolution of marriage action, the due process analysis is the same. See *State ex rel. Amanda M. v. Justin T., supra*. The Supreme Court, therefore, relied on the rationale of *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007), to determine what procedures are required by due process standards before a court can order joint physical custody. See *State ex rel. Amanda M. v. Justin T., supra*.

[3] In *Zahl v. Zahl, supra*, both parents in a marital dissolution action sought sole custody of their minor child. After holding a general custody hearing, the trial court awarded the parties joint legal and physical custody. On appeal, the Nebraska Supreme Court held that when a court has determined that joint physical custody is, or may be, in a child's best interests but neither party has requested joint custody, the court must give the parties an opportunity to present evidence on the issue before imposing joint custody. *Id*.

The *Zahl* court observed:

> Generally, procedural due process requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.

273 Neb. at 1052, 736 N.W.2d at 373.

[4] In determining that the parties in *Zahl v. Zahl, supra*, had not received adequate due process, the court noted that joint physical custody must be reserved for cases where, in the judgment of the trial court, the parents are of such maturity

that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction and will provide a stable atmosphere for the child to adjust to, rather than perpetuating turmoil or custodial wars. Therefore, because the factual inquiry for awarding joint custody was substantially different from that for an award of sole custody, without notice that joint custody would be considered, the parties did not receive adequate due process in preparing for the hearing on custody and were entitled to a new hearing. *Id.*

[5] The court in *State ex rel. Amanda M. v. Justin T.*, 279 Neb. 273, 777 N.W.2d 565 (2010), relied on the reasoning set forth in *Zahl v. Zahl, supra*, to conclude that in a paternity case subject to the Parenting Act where neither party has requested joint custody, if the court determines that joint physical custody is, or may be, in the best interests of the child, the court shall give the parties notice and an opportunity to be heard by holding an evidentiary hearing on the issue of joint custody. Failure to do so results in reversible error. See *State ex rel. Amanda M. v. Justin T., supra*.

In the present case, the requirements of due process were satisfied because Aguilar's complaint provided notice to Schulte that Aguilar was asking the court to consider joint custody. His complaint read:

> [Aguilar] and [Schulte] are fit and proper persons to be awarded the temporary and permanent care, custody and control of the minor child of the parties and it is in the best interest of the minor child that [Aguilar] and [Schulte] be awarded joint temporary and permanent custody, subject to the reasonable parenting time of the other party.

He asked that the court grant "temporary and permanent joint legal custody of the minor child with reasonable parenting time for both parties" and "[a]ll other just and equitable relief" as determined by the court. Aguilar clarified at trial that he was intentionally not asking for sole custody because he believed Schulte had an equal right to parent their son. We therefore conclude that Aguilar requested joint physical custody and that the district court did not err in considering the issue.

[6,7] Having concluded that the issue of joint physical custody was properly before the district court for consideration, we next determine whether the evidence supports an award of joint custody based upon a de novo review of the record. The factual inquiry necessary to impose joint physical custody is substantially different from that required for making a sole custody determination. *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007). While *Zahl v. Zahl* does not identify exactly what type of evidence is necessary for a determination of joint custody, subsequent cases make it apparent that the focus is on the parents' ability to communicate with each other and resolve issues together. See, *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009); *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003); *Vesper v. Francis*, No. A-12-1168, 2013 WL 5530281 (Neb. App. Oct. 8, 2013) (selected for posting to court Web site).

Aguilar testified that he and Schulte have communicated well with respect to certain aspects of parenting and jointly set boundaries and agreed upon things such as "bedtime," "nap time," and "timeouts" for discipline. They also agreed on their son's current daycare provider and agreed to share the cost of it proportionally. Aguilar testified that he thinks he and Schulte have done a "marvelous" job raising their son so far. The record reveals, however, that communication has not been perfect. For example, Aguilar had to pay for an emergency room visit for their son because Schulte would not share his Medicaid number or Social Security number. Schulte doubts this emergency room visit ever occurred. Despite this, when asked if he thought he would be able to continue to work with Schulte in splitting time with their son, Aguilar replied, "Of course." Aguilar noted that he and Schulte have taken their son to the doctor together on several occasions, for example, when he had tubes put in his ears and when he had surgery on his finger.

Although the parties have not communicated effectively 100 percent of the time, the record indicates that they have successfully communicated on issues of primary importance. They appear to have been able to reach an agreement on major

decisions regarding their son; therefore, we find no abuse of discretion with respect to the district court's order of joint physical custody.

*Travel to Mexico.*

Schulte contends that the district court erred in allowing Aguilar to travel with the minor child to Mexico. She claims the court improperly placed the burden on her to prove why such travel should not be allowed.

[8,9] A court determines the nature and extent of visitation rights on a case-by-case basis and may consider many factors and circumstances in each individual case, such as the age and health of the child, the character of the noncustodial parent, *the place where visitation rights will be exercised*, the frequency and duration of visits, the emotional relationship between the visiting parent and the child, the likely effect of visitation on the child, the availability of the child for visitation, the likelihood of disrupting an established lifestyle otherwise beneficial to the child, and, when appropriate, the wishes of the child. *Walters v. Walters*, 12 Neb. App. 340, 673 N.W.2d 585 (2004). Although limits on visitation are an extreme measure, they may be warranted where they are in the best interests of the children. *Id*.

[10] Based on the evidence presented at the hearing, the district court did not abuse its discretion in refusing to limit the location where Aguilar's parenting time with the child could take place. Although Schulte expressed concerns for the child's safety if he was to travel to Mexico, there was no evidence that Aguilar would place the child in a dangerous situation. The district court concluded, and the evidence supported the conclusion, that Aguilar is a fit and proper parent who appropriately cares for his child. Schulte testified at trial that Aguilar is a responsible father, and she has no complaints about his parenting. Aguilar said that he remains close to his parents, despite the distance, and speaks to them daily via telephone, "Skype," or text message. He said they have met his son through photographs, Skype, and telephone calls. Allowing the child time with his grandparents is in the child's best interests.

See *Nelson v. Nelson*, 267 Neb. 362, 674 N.W.2d 473 (2004) (generally, strong and healthy relationship with grandparents is in best interests of children).

Because we find no error in allowing Aguilar to travel with the child to Mexico, we also conclude that the court did not abuse its discretion in ordering Schulte to cooperate in obtaining the child's passport and executing the necessary documents for the child to travel out of the country.

[11] This court has previously upheld a trial court's order requiring a parent to execute documents to fulfill a separate portion of the court's order. See *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003). In *Coffey*, the mother of the parties' children initially had control over investment accounts for the children's college education expenses. A subsequent district court order of modification placed custody of the child with the father and provided that the father would have control of the children's accounts. The mother was ordered to execute any necessary documents to transfer her control of the accounts to the father. On appeal, because the trial court's modification order awarded custody to the father, we found no error in the portion of the order granting the father control of the children's accounts and requiring the mother to cooperate in transferring control. Similarly in the present case, because Aguilar was properly allowed to travel to Mexico with the child, we find no error in the portion of the order requiring Schulte's cooperation in securing documents to ensure that the child is able to leave and reenter the country.

We note that there are other circumstances in which courts order parties to cooperate and do what is necessary to comply with the court's order. For example, in a dissolution of marriage action, the trial court ordered the parties to execute any and all documents necessary or proper to fulfill the terms and/or requirements of their property settlement agreement. See *Blaine v. Blaine*, 275 Neb. 87, 744 N.W.2d 444 (2008). And in child custody cases, the Nebraska Supreme Court has upheld orders requiring one parent to execute a waiver of tax exemptions in favor of the other parent. See, *Hall v. Hall*, 238 Neb.

686, 472 N.W.2d 217 (1991); *Babka v. Babka*, 234 Neb. 674, 452 N.W.2d 286 (1990).

Schulte also claims that the district court's order coerces her into consenting that the child travel to Mexico. Specifically, she argues that if Mexican law requires a parent's consent in order for a child to enter the country, the district court's order becomes "trickery" because she would not be voluntarily consenting. Brief for appellant at 11. Schulte does not indicate whether Mexican law does, in fact, require parental consent, nor is there such evidence in the record.

[12] Without knowing whether Schulte's consent is required before the child can enter Mexico, we cannot conclude that the district court's order forces her to provide consent. A judgment from the district court or this court that orders Schulte to provide her consent if Mexican law requires it would constitute a conditional judgment, which would be ineffective and void. See *Garcia v. Platte Valley Constr. Co.*, 15 Neb. App. 357, 727 N.W.2d 698 (2007) (judgments that are dependent upon occurrence of uncertain future events, or conditional judgments, are wholly ineffective and void because they lead to speculation and conjecture as to what their final effect may be). Because there is no evidence that Schulte's permission is required in order for the child to enter Mexico, we reject this argument and affirm the district court's decision.

*Evidentiary Objection.*

Schulte also asserts that the district court erred when it sustained Aguilar's evidentiary objection to a certified copy of a warrant for his arrest. At trial, Schulte offered into evidence a certified copy of a warrant for Aguilar's arrest. Aguilar's counsel objected to the exhibit because it had not been provided to her prior to trial pursuant to the court's pretrial order. The court sustained the objection. Schulte now argues that compliance with the pretrial order was not possible because she only acquired the exhibit the morning of trial.

[13,14] Generally, the effect of a pretrial order is to control the subsequent course of the action. *Hillcrest Country Club v. N.D. Judds Co.*, 236 Neb. 233, 461 N.W.2d 44 (1990).

Litigants must adhere to the spirit of the pretrial procedure and are bound by a pretrial order to which no exception has been taken. *Cotton v. Ostroski*, 250 Neb. 911, 554 N.W.2d 130 (1996).

We agree with Schulte that the certificate attached to the warrant was dated March 6, 2013, the day trial began. However, the warrant itself was issued on January 10, nearly 2 months before trial began. Thus, Schulte had plenty of time prior to the day of trial to notify Aguilar of the existence of the warrant and her intention to offer it at trial. Accordingly, we find no error in the district court's decision to exclude the exhibit from evidence at trial.

## CONCLUSION

We conclude that the district court did not abuse its discretion in awarding the parties joint custody of their minor child. We also find no abuse of discretion in the court's decision allowing Aguilar to travel to Mexico with the child, and Schulte was properly ordered to cooperate in obtaining a passport and the necessary travel documents for the child. Finally, the district court did not err in sustaining Aguilar's objection to the certified copy of the arrest warrant. Accordingly, we affirm the decision of the district court.

AFFIRMED.