STATE OF NEBRASKA, APPELLANT, V.
MICHAEL D. HALL, APPELLEE.

691 N.W.2d 518

Filed January 28, 2005.    No. S-04-438.

Paul D. Kratz, Omaha City Attorney, Martin J. Conboy III, Omaha City Prosecutor, and J. Michael Tesar for appellant.

Dennis E. Martin and Kevin J. McCoy, of Dwyer, Smith, Gardner, Lazer, Pohren, Rogers & Forrest, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

When a vehicle's speed is at issue, Neb. Rev. Stat. § 60-6,192(1) (Reissue 2004) requires that a peace officer's visual observations regarding speed be "corroborated by the use of a radio microwave, mechanical, or electronic speed measurement device." In addition, § 60-6,192(1)(a) through (d) sets out requirements that the State must prove before offering results from a speed measurement device into evidence. The issue is whether—in addition to proving the requirements of § 60-6,192(1)(a) through (d)—the State must show that the results from the speed measurement device are admissible under Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1995). Rule 702 generally governs the admissibility of expert testimony.

The district court, in reversing Michael D. Hall's speeding conviction, ruled that the State, in addition to proving the requirements of § 60-6,192(1)(a) through (d), must show that the results from a speed measurement device are admissible under rule 702.

The State has taken exception to this ruling under Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 2004). We determine that when the State has proved the requirements of § 60-6,192(1)(a) through (d), a trial court has the discretion to admit the results from a radio microwave, mechanical, or electronic speed measurement device, even if the State has not shown that the results are admissible under rule 702.

## BACKGROUND

While enforcing the speed limit in Omaha, police officer Ronald W. Cline noticed Hall "driving at a real high rate of speed" and "passing all slower vehicle[s] on the interstate." To confirm his suspicion that Hall was speeding, Cline used a ProLaser III speed measurement device. The ProLaser III showed that Hall's vehicle's speed was 95 m.p.h. The posted speed limit was 60 m.p.h.; Hall was charged with speeding.

Cline is certified to use the ProLaser III; to become certified, he took a class and passed a test. Cline testified that when the ProLaser III is turned on, it conducts a series of internal tests to ensure that it is functioning properly. On the day that he ticketed Hall, this internal testing indicated that the ProLaser III was functioning properly.

Before going on duty, Cline also conducted an external test on the ProLaser III to ensure that the device was correctly measuring distance. He did this by pointing the ProLaser III at an object that he knew was a certain distance away. The test showed that the ProLaser III was correctly measuring distance. This was the only external testing that Cline conducted before he ticketed Hall. Nothing in the record suggests that Cline conducted either internal or external testing after he ticketed Hall.

At trial in county court, the State asked Cline at what speed the ProLaser III showed that Hall was traveling. Hall objected, but the county court allowed Cline to testify that the ProLaser III showed that Hall was traveling at 95 m.p.h. The county court found Hall guilty.

Hall appealed his conviction to the district court. He argued that the State had failed to comply with § 60-6,192(1) which provides:

> (1) Determinations made regarding the speed of any
> motor vehicle based upon the visual observation of any peace

officer, while being competent evidence for all other purposes, shall be corroborated by the use of a radio microwave, mechanical, or electronic speed measurement device. The results of such radio microwave, mechanical, or electronic speed measurement device may be accepted as competent evidence of the speed of such motor vehicle in any court or legal proceeding when the speed of the vehicle is at issue. Before the state may offer in evidence the results of such radio microwave, mechanical, or electronic speed measurement device for the purpose of establishing the speed of any motor vehicle, the state shall prove the following:

(a) The radio microwave, mechanical, or electronic speed measurement device was in proper working order at the time of conducting the measurement;

(b) The radio microwave, mechanical, or electronic speed measurement device was being operated in such a manner and under such conditions so as to allow a minimum possibility of distortion or outside interference;

(c) The person operating the radio microwave, mechanical, or electronic speed measurement device and interpreting such measurement was qualified by training and experience to properly test and operate the radio microwave, mechanical, or electronic speed measurement device; and

(d) The operator conducted external tests of accuracy upon the radio microwave, mechanical, or electronic speed measurement device, within a reasonable time both prior to and subsequent to an arrest being made, and the device was found to be in proper working order.

Specifically, Hall argued that the county court had erred in finding that the ProLaser III is a "radio microwave, mechanical, or electronic speed measurement device" and that Cline had conducted sufficient external accuracy tests on the ProLaser III before and after ticketing Hall as required by § 60-6,192(1)(d).

In addition to his § 60-6,192(1) arguments, Hall also argued in the district court that the results from the ProLaser III were inadmissible under rule 702 because the State had not offered expert testimony establishing that the ProLaser III produces reliable and relevant results. Rule 702 generally governs the admissibility of expert testimony. It provides: "If scientific, technical, or other

specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Under rule 702, the trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion. See, *Carlson v. Okerstrom*, 267 Neb. 397, 675 N.W.2d 89 (2004); *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001). This entails a preliminary assessment whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology properly can be applied to the facts in issue. *Schafersman v. Agland Coop, supra.*

The district court reversed Hall's conviction. Its reasoning can be summarized into two main points. First, it concluded that the results from the ProLaser III were inadmissible under rule 702 because the State had failed to establish that the device produces reliable results. Second, the court ruled that the distance testing conducted by Cline did not constitute sufficient external accuracy testing under § 60-6,192(1)(d). The State was granted leave to docket an appeal under § 29-2315.01.

## ASSIGNMENT OF ERROR

The State takes exception to the district court's ruling that in addition to the requirements of § 60-6,192(1)(a) through (d), the State was required to establish that the technology underlying the ProLaser III was reliable under rule 702.

## STANDARD OF REVIEW

The meaning of a statute is a question of law. *Cox Nebraska Telecom v. Qwest Corp.*, 268 Neb. 676, 687 N.W.2d 188 (2004). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Cave v. Reiser*, 268 Neb. 539, 684 N.W.2d 580 (2004).

## ANALYSIS

### SCOPE OF APPEAL

The State appealed the district court's decision under § 29-2315.01. Section 29-2315.01 is an exception to the general rule that the State has no right to appeal an adverse ruling in a

criminal case. See *State v. Johnson*, 259 Neb. 942, 613 N.W.2d 459 (2000). To take an exception under § 29-2315.01, the prosecuting attorney must file with the trial court an application for leave to docket an appeal concerning the erroneous rulings or decisions. The application must be accompanied by a copy of the ruling or decision complained of, the basis and reasons for the objection, and a statement by the prosecuting attorney as to the part of the record he or she intends to present to the appellate court. § 29-2315.01. The trial court then must indicate on the application whether it is in conformity with the truth and whether the part of the record the prosecuting attorney proposes to present to the appellate court is adequate for a proper consideration of the matter. *Id.* The application is then presented to the appellate court which determines whether to grant the application. *Id.*

Here, however, there is a discrepancy between the State's application for leave to file an appeal and the arguments in its brief. In its application for leave to docket an appeal, the State took exception only to the district court's holding that "the 'Daubert' analytical framework adopted in Nebraska in *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862(2001) applie[s] in the context of a speeding trial in addition to the statutory foundation found at Neb. Rev. Stat. § 60-6,192." But in its brief, the State also requests that we reverse the trial court's determination that Cline failed to conduct sufficient external accuracy tests as required by § 60-6,192(1)(d). Thus, we must determine what controls the scope of this appeal: the State's application to file an appeal under § 60-6,192(1) or the assignments of error in the State's brief.

The purpose of an appeal brought under § 29-2315.01 is "to provide an authoritative exposition of the law to serve as precedent in future cases." *State v. Detweiler*, 249 Neb. 485, 494, 544 N.W.2d 83, 90 (1996). Under § 29-2315.01, an appellate court determines whether authoritative exposition of the law is needed based upon the State's application for leave to docket an appeal. Thus, the scope of the State's appeal is set by the application and cannot be enlarged afterward when the State files its appellate brief.

In its application for leave to docket an appeal, the State did not take exception to the district court's conclusion that Cline

had failed to conduct sufficient external testing. Thus, we consider only the State's argument that the district court erred in ruling that the State—in addition to proving the requirements of § 60-6,192(1)(a) through (d)—must show that the results were relevant and reliable under rule 702.

An additional comment on the scope of this appeal is necessary. If the ProLaser III was not a "radio microwave, mechanical, or electronic speed measurement device," then the results from the ProLaser III could not have been used to corroborate Cline's visual observations of speed. Hall argued to the district court that the ProLaser III was not a radio microwave, mechanical, or electronic speed measurement device, but the court did not rule on this issue. Thus, for this appeal, we assume, without deciding, that the ProLaser III was a "radio microwave, mechanical, or electronic speed measurement device."

RULE 702 AND RESULTS FROM RADIO MICROWAVE, MECHANICAL, OR ELECTRONIC SPEED MEASUREMENT DEVICE

The State contends that for results from a radio microwave, mechanical, or electronic speed measurement device to be admissible in proceedings when the vehicle's speed is in issue, it need only prove the four requirements of § 60-6,192(1)(a) through (d). Hall, on the other hand, argues that in addition to proving the requirements of § 60-6,192(1)(a) through (d), the State must also establish that the results were admissible under rule 702. As noted earlier, rule 702 requires a trial court to act as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion. See, *Carlson v. Okerstrom*, 267 Neb. 397, 675 N.W.2d 89 (2004); *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001).

We determine, however, that neither the State nor Hall correctly interprets § 60-6,192(1). Statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Midwest Neurosurgery v. State Farm Ins. Cos.*, 268 Neb. 642, 686 N.W.2d 572 (2004). The key sentence in § 60-6,192(1) provides, "The results of such radio microwave, mechanical, or electronic speed measurement device *may be accepted as competent evidence* of the speed of such motor vehicle in any court or legal proceeding when the

speed of the vehicle is at issue." "Competent evidence" is evidence that is admissible and relevant on the point in issue. *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987), *overruled on other grounds, State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000). See, also, Black's Law Dictionary 596 (8th ed. 2004) (equating term "competent evidence" to admissible evidence). Accordingly, § 60-6,192(1) is a legislative determination that once the State has proved the requirements of § 60-6,192(1)(a) through (d), a court may treat the results from a radio microwave, mechanical, or electronic speed measurement device as admissible even if the State has laid no other foundation. Thus, if the State has proved the requirements of § 60-6,192(1)(a) through (d), it need not show that the results from the speed measurement device were also admissible under rule 702. See Richard Collin Mangrum, *Interpreting Nebraska Rule of Evidence 702 After the Nebraska Supreme Court Adopted the Federal* Daubert *Standard for the Admissibility of Expert Testimony in* Schafersman v. Agland Coop, 35 Creighton L. Rev. 31, 99 (2001) (noting that § 60-6,192(1) permits results from radio microwave, mechanical, or electronic speed measurement devices "to be admitted into evidence even without any foundational evidence regarding the reliability of the underlying theory or the accuracy of the methodology incorporated into the alternative speed devices").

We point out, however, that the admission of results from a speed measurement device is not—as the State seems to suggest—mandatory once the State has proved the requirements of § 60-6,192(1)(a) through (d). The statute does not say that the court *shall* accept the results as competent evidence, but, rather, that the results *"may be accepted."* The word "may" when used in a statute will be given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat the statutory objective. *Spaghetti Ltd. Partnership v. Wolfe*, 264 Neb. 365, 647 N.W.2d 615 (2002). Thus, § 60-6,192(1) grants discretion to trial courts; if the trial court is skeptical about the technology underlying the speed measurement device, it has the discretion to require further evidence on the technology before admitting the results into evidence.

Also, the admission of results from a radio microwave, mechanical, or electronic speed measurement device does not guarantee a

conviction. The defendant remains free to offer evidence calling into question the validity of the technology underlying the device. Further, how much weight to give the results remains a determination solely for the fact finder. See *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998).

EFFECT OF OUR RULING ON DISTRICT COURT'S
VACATION OF HALL'S CONVICTION

In the conclusion portion of its brief, the State claims

The foundation before the trial court was adequate under Neb. Rev. Stat. [§] 60-6,192 to support the trial court's exercise of sound discretion in allowing the speed reading from the Pro Laser 3 [sic] to be admitted at trial.

It follows that the judgment of the district court should be reversed and the matter remanded to that district court with directions to affirm the original judgment of the county court.

Brief for appellant at 33. But as we have already explained, the State failed to preserve its argument that the district court erred in ruling that the distance testing conducted by Cline did not constitute sufficient external testing of accuracy under § 60-6,192(1)(d). Thus, even though the district court incorrectly ruled that the State is required to show that results from a radio microwave, mechanical, or electronic speed measurement device are reliable under rule 702, an alternative basis for affirming the district court's judgment remains intact.

CONCLUSION

We hold that when a vehicle's speed is at issue, a trial court may admit results from a radio microwave, mechanical, or electronic speed measurement device if the State proves the requirements of § 60-6,192(1)(a) through (d). This is so even if the State has not shown that the results are admissible under rule 702. However, the admission of the results is discretionary and the trial court may require further evidence if it doubts the underlying technology.

EXCEPTION SUSTAINED.