In re Interest of Danajah G. et al.,
children under 18 years of age.
State of Nebraska, appellee, v.
Robyn G., appellee, and Darneil K.,
intervenor-appellant.

___ N.W.2d ___

Filed September 15, 2015.    No. A-14-709.

1. **Juvenile Courts: Evidence: Appeal and Error.** Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other.

2. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

3. **Child Custody: Visitation: Convicted Sex Offender.** Pursuant to Neb. Rev. Stat. § 43-2933(2) (Reissue 2008), no person shall be granted custody, parenting time, visitation, or other access with a child if the person has been convicted under Neb. Rev. Stat. § 28-319 (Reissue 2008) (first degree sexual assault) and the child was conceived as a result of that violation.

4. ____: ____: ____. Neb. Rev. Stat. § 43-2933(2) (Reissue 2008) does not provide for any exception to or discretion in its mandatory language.

5. **Child Custody: Visitation: Convicted Sex Offender: Statutes.** Neb. Rev. Stat. § 43-2933(2) (Reissue 2008) falls under the Parenting Act, Neb. Rev. Stat. § 43-2920 et seq. (Reissue 2008 & Cum. Supp. 2014), and not under the Nebraska Juvenile Code, Neb. Rev. Stat. § 43-245 et seq. (Reissue 2008 & Cum. Supp. 2014).

6. ____: ____: ____: ____. Neb. Rev. Stat. § 43-2933(2) (Reissue 2008) applies to cases under the Nebraska Juvenile Code when

parenting functions are at issue under chapter 42 of the Nebraska Revised Statutes.

7. **Parental Rights.** Parental rights constitute a liberty interest, and a parent's interest in the accuracy and justice of the decision to terminate his or her parental rights is a commanding one.

8. **Due Process: Notice.** Due process requires that parties at risk of deprivation of liberty interests be provided adequate notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which may be affected by it.

Appeal from the Separate Juvenile Court of Douglas County: DOUGLAS F. JOHNSON, Judge. Remanded with directions.

Barbara J. Prince for intervenor-appellant.

Elizabeth McClelland, Deputy Douglas County Attorney, for appellee State of Nebraska.

Kate E. Placzek, of Law Office of Kate E. Placzek, for appellee Robyn G.

IRWIN, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.
Darneil K., the father of Danajah G. and an intervenor in these juvenile court proceedings, appeals from an order of the juvenile court which granted a motion to change Danajah's physical placement from Darneil's home to the home of Danajah's mother, Robyn G. We remand the matter back to the juvenile court with directions.

## BACKGROUND

Robyn and Darneil are the parents of Danajah, born in December 2006. On May 2, 2007, Darneil entered a plea of guilty to first degree sexual assault, a Class II felony; Robyn was the child victim (Robyn was 14 or 15 years of age at the time of the offense and Darneil was 21 or 22 years of age). The record suggests that Danajah was conceived as a result of the "statutory rape" of Robyn by Darneil.

- 246 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

Robyn is also the mother of Nadiah G., born in March 2010; Jade G., born in December 2011; and Kaziah G., born in December 2013. Darneil is not the father of Robyn's other children. Because these other children are not affected by this appeal, they will be discussed only as necessary.

On July 18, 2007, the State filed a petition alleging that Danajah was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2006), through no fault of Robyn, in that (1) Robyn was placed into protective custody by law enforcement on July 17, (2) Robyn was placed outside of the parental home, (3) Robyn was "unable to provide proper care and support for [Danajah] with assistance," and (4) due to the above allegations, Danajah was at risk for harm. On November 8, Robyn pled no contest to the allegations in the petition, and, as noted in the court's order filed on November 13, Danajah was adjudicated accordingly.

In its disposition order filed on November 28 or 29, 2007 (the date on the file stamp is difficult to read), the court stated that the permanency objective was family preservation. However, in its order filed on January 20, 2009, the court stated that the permanency objective was reunification with a concurrent plan of adoption. And in its order filed on June 18, the court struck reunification and adopted a permanency plan of adoption; the court noted that Danajah had been in foster care since July 18, 2007. Although Robyn appealed the June 18, 2009, order to the juvenile review panel, the review panel affirmed the order of the juvenile court.

Also in the June 18, 2009, order, the juvenile court noted that putative father Darneil appeared and requested DNA testing, which the court ordered. After obtaining DNA testing, Darneil filed a complaint on December 8 to intervene. In an order filed on January 14, 2010, the court granted Darneil's complaint to intervene. Also on January 14, the court placed Danajah with Robyn, who was at "Family Works" for residential drug treatment. The court stated that the permanency objective was adoption with a concurrent plan of

- 247 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

reunification, provided that Robyn successfully completed treatment at Family Works and maintained consistent therapeutic progress.

In an order filed on September 15, 2010, the court found that the permanency objective was ongoing family preservation and struck the alternative plan of adoption. The court relieved the Nebraska Department of Health and Human Services (DHHS) of all responsibility in the matter. The court retained jurisdiction as to the custody issue between Robyn and Darneil.

On December 22, 2011, the State filed a supplemental petition alleging that Danajah and her two sisters, Nadiah and Jade, were children within the meaning of § 43-247(3)(a) (Reissue 2008) because Robyn and newborn Jade tested positive for PCP. Also on December 22, the State filed a motion for immediate custody of all three children, which motion was granted by the juvenile court; thus, all three children were placed in the temporary custody of DHHS.

On February 16, 2012, Darneil filed a motion for placement of Danajah, which was granted on March 9 over the objection of Robyn and the guardian ad litem.

In its order filed on March 23, 2012, the court noted that the adjudication and disposition hearing was held on March 22; however, those proceedings do not appear in our record. As noted in the order, Robyn pled no contest to the portion of the supplemental petition alleging that her use of alcohol or controlled substances placed her children at risk for harm; and the court adjudicated Danajah and her sisters accordingly. In a separate order of that same date, the court noted it was reported to the court that Danajah said Darneil whips her and that when "questioned further," Danajah would "shut down" and give only one-word answers. The court ordered that Danajah was to be immediately removed from Darneil's home to undergo a forensic interview.

On May 17, 2012, Darneil filed a "Motion for Detention Review and Early Review" due to Danajah's continuing

out-of-home placement without any filing by the State against Darneil. Also on May 17, the guardian ad litem filed an ex parte motion to change visitation, requesting that Robyn's visitation change from unsupervised to supervised due to her having tested positive for PCP; the court granted the guardian ad litem's motion that same day. On May 24, the court ordered that Danajah be returned to Darneil "within 48 hours unless there are further filings or charges" (emphasis omitted). No filings or charges were made against Darneil, and Danajah was subsequently placed with Darneil.

On July 27, 2012, Robyn filed a motion for placement requesting that Danajah be placed with her and Danajah's siblings at Family Works. In an order filed on August 1, the court ordered that Danajah was to remain in the custody of DHHS, but placed with Darneil. The court also changed the permanency plan for Danajah to family preservation with Darneil. Darneil was ordered to undergo a "Nebraska Safe Start Assessment" and participate in child-parent psychotherapy. Robyn was ordered to successfully complete residential inpatient treatment; undergo random drug testing a minimum of twice per week; not possess or ingest alcohol or controlled substances unless prescribed by a licensed, practicing physician; participate in family therapy with Danajah; participate in unsupervised and overnight visitation when sufficient therapeutic progress had been made and upon the recommendation of Danajah's therapist; undergo a Nebraska Safe Start Assessment; and participate in child-parent psychotherapy. The court further ordered that Robyn and Darneil "shall address placement and custody of . . . Danajah . . . through alternative dispute resolution" (emphasis omitted).

In its review and permanency planning order filed on December 21, 2012, the court stated that the permanency plan for Danajah was ongoing family preservation with Darneil. Robyn was ordered to continue to participate in her substance abuse treatment, undergo random drug testing a minimum of once per week, not possess or ingest alcohol or controlled

- 249 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

substances unless prescribed by a doctor, participate in family therapy with Danajah, and participate in unsupervised and overnight visitation with Danajah.

In its review and permanency planning order filed on June 12, 2013, the court stated that the permanency objective was ongoing family preservation. The court ordered Robyn and Darneil to participate in alternative dispute resolution regarding custody issues and a parenting plan. In a status check order filed on August 9, the court noted that Robyn attended the scheduled alternative dispute resolution, but that Darneil did not. The court again ordered both parents to attend and participate in alternative dispute resolution.

In its review and permanency planning order filed on November 22, 2013, the court stated that the permanency objective was ongoing family preservation. The court ordered Robyn and Darneil to undergo "random, frequent, observed drug testing" upon the request of DHHS or Nebraska Families Collaborative (NFC). We note that the review and permanency hearing was held on November 21, but that the order was not filed until November 22. Darneil was drug tested on November 21 and tested positive for marijuana. Robyn was also tested on November 21, and her test came back negative for all substances.

On February 19, 2014, Janaye P., Darneil's live-in girlfriend, physically assaulted Robyn in the presence of all of Robyn's children. The assault took place in front of Darneil's home, and Darneil was present during the assault.

On March 13, 2014, Robyn filed a motion to show cause against DHHS and NFC. She also filed a motion for change of placement of Danajah from Darneil's home to Robyn's home. The court ordered the parties, and the parties agreed, to obtain testimony by deposition and submit written arguments.

We now summarize the deposition testimony. Jamise Williams is a family permanency specialist with NFC and was assigned to this case in early 2012. In her deposition, she testified that Danajah had been placed with Darneil since

- 250 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

May 26, 2012. Williams ran a full background check on Darneil prior to placement and was aware that he was a registered sex offender and aware of his criminal history regarding drugs (including "intent to deliver crack cocaine"). Williams stated that Darneil lived with his girlfriend Janaye and that the two "frequently h[e]ld themselves out to be married."

Williams testified that when a report of child abuse or neglect is made to a child abuse hotline and has been accepted for investigation by hotline personnel, NFC is informed, but the case is assigned to a DHHS initial assessment worker. If the report is not accepted for investigation by hotline personnel, then NFC will follow up on the allegation. Williams testified that both Robyn and Darneil called to inform her of the February 19, 2014, incident between Robyn and Janaye. Prior to being notified that a report had been made to the child abuse hotline and that it had been accepted for investigation by DHHS, Williams interviewed Robyn, Darneil, Janaye, and Danajah. Williams also spoke with Danajah's therapist, Machaela Hackendahl, regarding the incident.

Williams testified that Robyn told her she went to Darneil's home to pick up Danajah, but was a little late. Prior to arriving, Robyn received text messages from Darneil and Janaye saying that she was a bad mother and drug addict and that she did not care about Danajah. When Robyn arrived at Darneil's home, he told her to get out of the car, they were arguing, and then Darneil told Janaye to "whip Robyn's ass." Robyn stated that she was still in the car and that Janaye reached through the open car window and hit Robyn in the face and pulled Robyn's hair. Danajah got in the car, and Robyn drove off. The incident occurred in front of Danajah, as well as Robyn's other children, who were also in the car. When Williams saw Robyn on February 20, Robyn had visible injuries; Robyn's lips were swollen, and three patches of her hair were missing. Williams testified that Danajah told her the same story as Robyn did, almost word for word. Williams had concerns that Danajah might have been coached, but she did not know

for sure; she agreed it was possible that Danajah's story was the same because it recounted what happened. Danajah told Williams that she did not want to go back to Darneil's house and that she did not feel safe there. Danajah also reported that Darneil smoked "weed" around her "all of the time"; Darneil was drug tested 1 week later and tested negative. Williams also testified that Danajah had a history of telling "fibs" about each parent.

Williams spoke with Darneil and Janaye, who both reported that when Robyn arrived to pick up Danajah, Robyn got out of her car, "got in Darneil's face," and made gestures with her arms as if she wanted to hit him. Darneil and Janaye told Williams that Janaye stepped in to defend Darneil and hit Robyn. Neither Darneil nor Janaye said that Robyn hit anyone.

On February 20, 2014, Darneil and Janaye filed petitions and affidavits to obtain protection orders against Robyn. Their affidavits contained accounts of the February 19 incident similar to the accounts they reported to Williams and made no mention of Robyn's hitting anyone during the incident. The petitions were ultimately dismissed.

Jennifer White was the DHHS assessment worker assigned to investigate the February 19, 2014, incident between Robyn and Janaye. White testified that Danajah told her that Robyn "pulled up" and Darneil yelled at Robyn to "get her ass" out of the car, Janaye punched Robyn, and then Robyn drove away. White testified that Danajah did not act frightened or scared. White testified Danajah also told her that all of the "nice stuff" she said about Darneil was not true and that all of the "mean stuff" she said about Robyn was not true; White thought Danajah was referring to statements Danajah made during a November 2013 investigation. White was also concerned about coaching, because Danajah said Robyn told her that she might go to foster care and that she should tell White "what had happened"; White did not clarify with Danajah whether this meant to tell the truth.

When White spoke to Darneil and Janaye about the February 19, 2014, incident, they both reported that when Robyn arrived to pick up Danajah, Robyn got out of her car, approached Darneil, and made gestures with her arms as if she wanted to hit him. They both said that Janaye stepped in between Robyn and Darneil, Robyn hit Janaye twice, and then Janaye hit Robyn back two or three times. Robyn then went back to her car and left with Danajah and her other children. When White spoke with Robyn, Robyn reported that Janaye hit her twice in the head and pulled her hair. Robyn stated that she never got out of her car and that she never hit Janaye. Robyn stated that she went to a dental clinic and was sent to the emergency room for her injuries.

Hackendahl, a clinical therapist, is Danajah's individual therapist and is the family therapist for Danajah and Darneil. She spoke with Danajah the day after the February 19, 2014, incident between Robyn and Janaye. Danajah told Hackendahl that Robyn and Janaye got into a fight; Danajah did not say anything else.

White determined that Danajah was not physically neglected. Williams testified that Danajah was put into respite care for the weekend and then allowed to return to Darneil's home because Danajah was determined to be safe. A family permanency supervisor with NFC testified that NFC did not want Danajah removed from Darneil's home based on her having witnessed one incident between Robyn and Janaye. Arrangements were made so that Robyn and Darneil would not need to see each other for future parenting time exchanges.

Deposition testimony was also received regarding other aspects of Robyn's and Darneil's parenting abilities. Evidence was presented that Darneil was convicted of possessing less than 1 ounce of marijuana (and sentenced to pay a fine) after Danajah was placed with him. He also tested positive for marijuana in November 2013. However, Williams testified that there was no evidence that Darneil's drug use occurred in front of Danajah or had any effect on her. Williams testified

- 253 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

that Danajah was safe with Darneil and Janaye, and Williams had no concerns about Darneil's parenting. Williams testified that over the course of the case, Janaye had tried to keep the peace between Robyn and Darneil; that she had never known Janaye to be aggressive until the incident on February 19, 2014; and that Janaye "knows it was wrong." Williams testified that there was currently a district court custody matter on file involving the parties. She preferred not to change Danajah's placement, if matters could be addressed with services.

Hackendahl testified that she provided individual therapy for Danajah and family therapy for Danajah and Darneil from April 2012 to August 2013, at which point they "graduated" due to meeting their goals. Hackendahl testified that Janaye was part of the family therapy. Hackendahl resumed individual therapy with Danajah in November 2013 due to Danajah's "escalating" behaviors at school. Hackendahl was providing weekly individual therapy to Danajah; family therapy skills were worked on the first and last 10 minutes of each session. Hackendahl testified that Danajah's general anxiety disorder stemmed from a lack of permanency and that Robyn and Darneil needed to work on coparenting. Hackendahl testified that she would have concerns about changing Danajah's placement at the time because custody had not been decided. Hackendahl was worried that a lot of changes and moves could increase Danajah's symptoms of anxiety. Hackendahl testified that it was not in Danajah's best interests to change placement at the time.

Hackendahl testified that she knew from the beginning that Darneil was convicted of the statutory rape of Robyn, but that he had done his time and had gotten placement of Danajah. Hackendahl was also minimally aware of Darneil's past drug use; she knew that he tested positive for marijuana in November 2013, but was not aware of his specific criminal history related to drugs or that he admitted to the social use of marijuana. Hackendahl had no concerns about Danajah's

- 254 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

continuing presence in Darneil's home. She testified that Danajah and Darneil are attached and bonded.

Hackendahl testified that Danajah would sometimes say that she did not want to go to Robyn's house. And on several occasions, Danajah said that if Robyn put "her high heels on," Danajah knew that Robyn would go out and get drunk. On a couple occasions, Danajah said that Robyn would hit her with a belt that had spikes on the end of it if Danajah came out of her room when Robyn had people over. Hackendahl testified that there would be several months where Danajah made no reports about Robyn, and then there would be a month where Danajah was reporting on Robyn weekly. Hackendahl testified that Darneil tried to get Danajah excited for her visits with Robyn and that he was positive about the visits.

Hackendahl had never met or spoken to Robyn. Hackendahl initially received a referral for Danajah and Darneil, so that was how she established therapy. When Hackendahl first started therapy with Danajah, she called Robyn a few times to get information, but Robyn never responded. Hackendahl felt it would be therapeutically detrimental to bring Robyn into her sessions with Danajah and Darneil at that point. She also felt that it would be a conflict of interest, because she was working with Darneil and Janaye, and that it could be tricky keeping things confidential between different aspects of the family. However, Hackendahl did consult with Hillary Chaney, who was currently providing family therapy for Robyn and Danajah.

According to Williams, Robyn had been "clean and sober" since entering Family Works in May 2012; she was successfully discharged in November or December 2012. Robyn was having unsupervised visits with Danajah for over a year. Her current visitation schedule with Danajah was every Wednesday overnight until Thursday morning and every other weekend from after school on Friday until Sunday at 4 p.m. Robyn had stable housing large enough for all of her children and "generally always has a job." Nadiah and Jade are placed with

- 255 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

Robyn. Kaziah has never been a ward of the State and has always lived with Robyn.

Williams testified that in early 2013, she arranged family therapy between Robyn and Danajah with a therapist who was also to do outpatient treatment with Robyn for Family Works aftercare. However, Robyn was discharged for missing appointments. Williams offered to do another referral, but Robyn did not think that she and Danajah needed family therapy at that time. Robyn resumed family therapy with Danajah in March 2014 with Chaney.

Chaney testified that she had six sessions with Robyn and Danajah; Robyn canceled three other sessions. During the first session, Danajah got upset and ran out of the room; Robyn had to be prompted to go after Danajah. Also, at one of the early sessions, Danajah had gotten "in a little bit of trouble" during the session and said she was afraid to go home because she was going to be "in big trouble." Robyn reported to Chaney that she yells at Danajah a lot, so they are working on more positive discipline. Chaney testified that Robyn has implemented at least a little bit of positive praise each session. Chaney testified that they are working on family connectedness; she usually gives a goal 6 months before reassessing.

In its order filed on July 30, 2014, the court overruled the motion to show cause. However, the court sustained Robyn's motion to change placement and ordered that Danajah be placed in Robyn's home. The court also ordered that Darneil's visitation was to be supervised and to occur in a neutral location. The court found "credible evidence" that Darneil told Janaye to "'whip [Robyn's] ass'" and that Janaye did assault Robyn, causing serious injuries to Robyn. The court found that the assault occurred while children were present, causing them "emotional trauma." The court stated that Darneil and Janaye were not credible in their recitation of the facts and changed their version of the assault multiple times. The court also stated:

- 256 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

It also continues to be of great concern to the Court that [Darneil] was convicted of First Degree Sexual Assault of a Child [sic], that the child victim was [Robyn], and that Danajah . . . was conceived as a result of the sexual assault. In spite of this [Darneil] reports that conviction as "consensual sex with a minor[.]"

Darneil appeals.

## ASSIGNMENTS OF ERROR

Darneil assigns that the juvenile court erred (1) in granting Robyn's motion to change placement and finding that it is in Danajah's best interests to change placement, (2) in removing Danajah from Darneil's home and ordering that Darneil have only supervised visitation in a neutral location, (3) in finding there was credible evidence that Darneil told Janaye to "'whip [Robyn's] ass'" or that the fight caused Danajah emotional trauma, and (4) because its order changing Danajah's placement and ordering supervised visitation was contrary to the evidence and minimum due process standards were not met.

## STANDARD OF REVIEW

[1] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Joseph S. et al.*, 288 Neb. 463, 849 N.W.2d 468 (2014).

## ANALYSIS

[2] At the outset of our review, we must address an issue of plain error. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of Justine J. & Sylissa J.*, 288 Neb. 607, 849 N.W.2d 509 (2014).

- 257 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

[3] In its order, the juvenile court stated that it "continues to be of great concern to the Court that [Darneil] was convicted of First Degree Sexual Assault of a Child [sic], that the child victim was [Robyn], and that Danajah . . . was conceived as a result of the sexual assault." Although the juvenile court provided no statutory reference when making these statements, we note that Neb. Rev. Stat. § 43-2933(2) (Reissue 2008) states that "[n]o person shall be granted custody, parenting time, visitation, or other access with a child if the person has been convicted under section 28-319 and the child was conceived as a result of that violation." Neb. Rev. Stat. § 28-319 (Reissue 2008) is the statute for first degree sexual assault. Neither the court nor the parties raised § 43-2933(2) anywhere in the record before us or in briefing. (The State did not submit a brief on appeal.)

[4] However, the record before us does suggest that Darneil pled guilty to first degree sexual assault pursuant to § 28-319(1)(c) (the actor is 19 years of age or older and the victim is at least 12 years of age but less than 16 years of age), that Robyn was the victim of that sexual assault, and that Danajah was conceived as a result of the violation. The record also reflects that Darneil was required to register as a sex offender under the Sex Offender Registration Act (SORA). See Neb. Rev. Stat. §§ 29-4001 to 29-4014 (Reissue 2008 & Cum. Supp. 2014). Section 43-2933(2) does not provide for any exception to or discretion in its mandatory language, whereas § 43-2933(1)(a) and (b) provide discretion to the court to consider whether a registered sex offender is a significant risk to the child. We set forth § 43-2933 in its entirety:

> (1)(a) No person shall be granted custody of, or unsupervised parenting time, visitation, or other access with, a child if the person is required to be registered as a sex offender under [SORA] for an offense that would make it contrary to the best interests of the child for such access or for an offense in which the victim was a minor or if the person has been convicted under *section 28-311*,

- 258 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

*28-319.01*, *28-320*, *28-320.01*, or *28-320.02*, unless the court finds that there is no significant risk to the child and states its reasons in writing or on the record.

(b) No person shall be granted custody of, or unsupervised parenting time, visitation, or other access with, a child if anyone residing in the person's household is required to register as a sex offender under [SORA] as a result of a felony conviction in which the victim was a minor or for an offense that would make it contrary to the best interests of the child for such access unless the court finds that there is no significant risk to the child and states its reasons in writing or on the record.

(c) The fact that a child is permitted unsupervised contact with a person who is required, as a result of a felony conviction in which the victim was a minor, to be registered as a sex offender under [SORA] shall be prima facie evidence that the child is at significant risk. When making a determination regarding significant risk to the child, the prima facie evidence shall constitute a presumption affecting the burden of producing evidence. However, this presumption shall not apply if there are factors mitigating against its application, including whether the other party seeking custody, parenting time, visitation, or other access is also required, as the result of a felony conviction in which the victim was a minor, to register as a sex offender under [SORA].

(2) No person shall be granted custody, parenting time, visitation, or other access with a child if the person has been convicted under *section 28-319* and the child was conceived as a result of that violation.

(3) A change in circumstances relating to subsection (1) or (2) of this section is sufficient grounds for modification of a previous order.

(Emphasis supplied.) Based upon the record before us, specifically the information and sentencing order, it appears Darneil was convicted under § 28-319(1)(c), first degree

- 259 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

sexual assault (sexual penetration) when the actor is 19 years of age or older and the victim is at least 12 years of age but less than 16 years of age. First degree sexual assault under this statute is a Class II felony, which provides for a minimum prison sentence of 1 year and a maximum of 50 years. A conviction pursuant to § 28-319(1)(c) is not listed as an offense under § 43-2933(1)(a), which would allow a court discretion in determining access to a child. Therefore, pursuant to § 43-2933(2), a conviction under § 28-319 operates as an absolute bar to Darneil's access to Danajah.

In contrast, we note that Neb. Rev. Stat. § 28-319.01 (Cum. Supp. 2014) (first degree sexual assault of a child) is an offense listed under § 43-2933(1)(a) and that a conviction under § 28-319.01 gives a court discretion in allowing access to a child. Section 28-319.01 is similar to § 28-319(1)(c) in that it also requires sexual penetration, but § 28-319.01 applies when (1) the actor is 19 years of age or older and the victim is under 12 years of age or (2) the actor is 25 years of age or older and the victim is at least 12 years of age but less than 16 years of age. First degree sexual assault of a child is classified as a more serious Class IB felony, with a mandatory minimum sentence of 15 years in prison for the first offense. § 28-319.01(2). A Class IB felony has a maximum sentence of life imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). So although a conviction under § 28-319.01 has been determined by the Legislature to be a more serious Class IB felony offense, the Legislature nevertheless gives discretion to the courts to determine the appropriateness of parental access to a child who may have been conceived as a result of such an offense. With a mandatory minimum sentence of 15 years, clearly contact with the child would be limited but, nevertheless, permitted.

On the other hand, since our record suggests that Darneil was convicted under § 28-319(1)(c), pursuant to the nondiscretionary language of § 43-2933(2), Darneil is prohibited from having any custody of, parenting time or visitation with, or

other access to Danajah whatsoever. While we note this somewhat inconsistent treatment of a conviction under § 28-319 versus § 28-319.01 with regard to access to a child, not to mention the severe outcome of absolute denial of Darneil's access to Danajah after having been involved in her parenting for almost 2 years, those differences and outcomes are legislative matters and are not issues before us in this appeal. For purposes of our review, we consider only whether the Parenting Act, specifically § 43-2933(2), applies to actions brought under the Nebraska Juvenile Code and, if so, whether due process requires a remand for further proceedings before Darneil's access to Danajah can be absolutely barred.

*Does Parenting Act Apply to*
*Nebraska Juvenile Code?*

[5,6] Section 43-2933(2) falls under the Parenting Act, Neb. Rev. Stat. § 43-2920 et seq. (Reissue 2008 & Cum. Supp. 2014), and not under the Nebraska Juvenile Code, Neb. Rev. Stat. § 43-245 et seq. (Reissue 2008 & Cum. Supp. 2014), pursuant to which the present proceeding was brought. Therefore, in considering whether § 43-2933 applies to this case, we start with § 43-2924, which states:

(1) The Parenting Act shall apply to proceedings or modifications filed on or after January 1, 2008, in which parenting functions for a child are at issue (a) under Chapter 42, including, but not limited to, proceedings or modification of orders for dissolution of marriage and child custody and (b) under sections 43-1401 to 43-1418. The Parenting Act may apply to proceedings or modifications in which parenting functions for a child are at issue under Chapter 30 or 43.

(2) The Parenting Act does not apply in any action filed by a county attorney or authorized attorney pursuant to his or her duties under section 42-358, 43-512 to 43-512.18, or 43-1401 to 43-1418, the Income Withholding for Child Support Act, the Revised Uniform

- 261 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

Reciprocal Enforcement of Support Act before January 1, 1994, or the Uniform Interstate Family Support Act for purposes of the establishment of paternity and the establishment and enforcement of child and medical support. A county attorney or authorized attorney shall not participate in the development of or court review of a parenting plan under the Parenting Act. If both parents are parties to a paternity or support action filed by a county attorney or authorized attorney, the parents may proceed with a parenting plan.

As stated above, application of the Parenting Act is mandatory when parenting functions are at issue under chapter 42 (husband and wife), but it "may apply" to proceedings when parenting functions are at issue under chapter 30 (decedents' estates; protection of persons and property) and chapter 43 (infants and juveniles). § 43-2924(1). There are specific matters excluded from the Parenting Act when brought by a county attorney as set forth in § 43-2924(2); however, notably, there is no exclusion for matters brought pursuant to the Nebraska Juvenile Code. Our Supreme Court has held that even when an action was brought by the State to establish paternity and child support pursuant to Neb. Rev. Stat. §§ 43-1401 through 43-1408 (Reissue 2008), which action would be excluded from the Parenting Act under § 43-2924(2), the Parenting Act can nevertheless apply if certain conditions are met. See *State ex rel. Amanda M. v. Justin T.*, 279 Neb. 273, 777 N.W.2d 565 (2010) (when both parents become parties to action and proceedings become those in which custody and parenting functions are at issue, Parenting Act applies). We also note that Neb. Rev. Stat. § 43-1411.01(2) (Cum. Supp. 2014) (paternity action) states that "[w]henever termination of parental rights is placed in issue in any case arising under sections 43-1401 to 43-1418, the Nebraska Juvenile Code and the Parenting Act shall apply to such proceedings."

In matters pertaining to parenting and children, it certainly makes sense that issues addressed within the Nebraska

- 262 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

Juvenile Code, Parenting Act, and paternity, guardianship, and divorce statutes will have relevant applications between them and, in some instances, contain specific references to and rely upon language from other statutory sections. For example, in *In re Interest of Cassandra B. & Moira B.*, 290 Neb. 619, 628, 861 N.W.2d 398, 405 (2015), our Supreme Court noted that "[u]nder the Nebraska Juvenile Code, '[l]egal custody' has the same meaning as under the Parenting Act," citing to §§ 43-245(13) and 43-2922(13). That would be true regarding physical custody as well. See §§ 43-245(20) ("[p]hysical custody has the same meaning as in section 43-2922") and 43-2922(21) (defines physical custody). We also observe that there is substantial interplay between statutes contained in chapters 42 (husband and wife) and 43 (infants and juveniles) when considering the best interests of a child. For example, Neb. Rev. Stat. § 42-364(5) (Cum. Supp. 2014) provides that whenever termination of parental rights is placed in issue, a trial court shall transfer jurisdiction to a juvenile court established pursuant to the Nebraska Juvenile Code unless a showing is made that a county or district court is a more appropriate forum. Furthermore, in considering the best interests of a child under a termination of parental rights for abandonment under the Nebraska Juvenile Code pursuant to Neb. Rev. Stat. § 43-292(1) (Cum. Supp. 2014), our Supreme Court looked to the definition of best interests as set forth in the Parenting Act at § 43-2923. See *Kenneth C. v. Lacie H.*, 286 Neb. 799, 839 N.W.2d 305 (2013).

Given the apparent relevant applications between the Nebraska Juvenile Code and the Parenting Act when addressing the custody and best interests of a child, and further, since the Nebraska Juvenile Code is not specifically excluded from the Parenting Act, § 43-2924(1) tells us that if parenting functions are at issue, the Parenting Act "may" apply.

There is no question that parenting functions are at issue in this case. "Parenting functions means those aspects of the relationship in which a parent or person in the parenting role

- 263 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

makes fundamental decisions and performs fundamental functions necessary for the care and development of a child." § 43-2922(18). Such functions include, among other things, maintaining a safe, stable, consistent, and nurturing relationship with the child; feeding and clothing the child; attending to the child's health and medical needs and emotional stability; and attending to adequate education for the child. *Id*. The matter before us clearly involves parenting functions; accordingly, the Parenting Act and, specifically in this case, § 43-2933(2) "may" apply. Since "may" is not mandatory, we next consider whether the Parenting Act was intended to apply to circumstances such as those presented to us in this juvenile court proceeding.

Statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *State v. Hall*, 269 Neb. 228, 691 N.W.2d 518 (2005). The word "may" when used in a statute will be given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat the statutory objective. *Id*. In construing a statute, appellate courts are guided by the presumption that the Legislature intended a sensible rather than absurd result in enacting the statute. *State v. Norman*, 282 Neb. 990, 808 N.W.2d 48 (2012). Also, a court must look to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served, and then must place on that statute a reasonable or liberal construction that best achieves the statute's purpose, rather than a construction that defeats the statutory purpose. *Id*. It is the duty of a court to give a statute an interpretation that meets constitutional requirements if it can reasonably be done. *Id*. Accordingly, in considering whether § 43-2933(2) of the Parenting Act should be applied to proceedings under the Nebraska Juvenile Code, we look to the legislative findings related to the Parenting Act as set forth at § 43-2921, which states, in relevant part:

- 264 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

The Legislature . . . finds that it is in the best interests of a child to have a safe, stable, and nurturing environment. The best interests of each child shall be paramount and consideration shall be given to the desires and wishes of the child if of an age of comprehension regardless of chronological age, when such desires and wishes are based on sound reasoning.

In any proceeding involving a child, the best interests of the child shall be the standard by which the court adjudicates and establishes the individual responsibilities, including consideration in any custody, parenting time, visitation, or other access determinations as well as resolution of conflicts affecting each child. The state presumes the critical importance of the parent-child relationship in the welfare and development of the child and that the relationship between the child and each parent should be equally considered unless it is contrary to the best interests of the child.

Given the potential profound effects on children from witnessing child abuse or neglect or domestic intimate partner abuse, as well as being directly abused, the courts shall recognize the duty and responsibility to keep the child or children safe when presented with a preponderance of the evidence of child abuse or neglect or domestic intimate partner abuse, including evidence of a child being used by an abuser to establish or maintain power and control over the victim. In domestic intimate partner abuse cases, the best interests of each child are often served by keeping the child and the victimized partner safe and not allowing the abuser to continue the abuse. When child abuse or neglect, domestic intimate partner abuse, or unresolved parental conflict prevents the best interests of the child from being served in the parenting arrangement, then the safety and welfare of the child is paramount in the resolution of those conflicts.

- 265 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

From these legislative findings, it is apparent that the best interests of a child are paramount under the Parenting Act. It is also evident that the Parenting Act considers domestic intimate partner abuse (which includes sexual assault) and unresolved parental conflict to be significant factors in considering a child's best interests. The significant common denominator shared by the Parenting Act and the Nebraska Juvenile Code is consideration of a child's best interests. And the only way to read § 43-2933(2) is that the Legislature has determined that it is in a child's best interests, when the child was born as a result of "statutory rape" (or other first degree sexual assault situations), to have absolutely no contact with the parent (male or female) who perpetrated and was convicted of such an act. This is so regardless of (1) any alleged consensual nature of the act, (2) consent to parenting time with the child by the victim or victim's parent or guardian, or (3) a court's determination that parental contact may be desirable and appropriate. Presumably, a woman could be convicted of statutory rape under § 28-319(1)(c) for a sexual act involving an underage male victim and, if that sexual act results in the conception and birth of a child, have no right to any access whatsoever to that child. Section 43-2933(2) states, "No person shall be granted custody, parenting time, visitation, or other access with a child if the person has been convicted under section 28-319 and the child was conceived as a result of that violation." Although it is questionable whether § 43-2933(2) promotes a child's best interests by such a strict prohibition against parental access no matter the circumstances, we cannot say that it has no application in the Nebraska Juvenile Code and therefore this case. It would not achieve the statute's purpose if it were only mandatorily applied in situations arising under chapter 42 (husband and wife) and not in situations like the one before us. Accordingly, we conclude § 43-2933(2) applies to cases under the Nebraska Juvenile Code when parenting functions are at issue.

*Deprivation of Liberty Interest*
*Requires Due Process.*

[7,8] In light of our determination that § 43-2933(2) applies to the juvenile court proceeding before us, we now consider whether the record is sufficient for this court to impose the absolute prohibition against Darneil's parental access to Danajah in accordance with that statute. We conclude that our record is not sufficient and that due process requires that Darneil have an opportunity to be heard and present evidence before his access to Danajah can be terminated. It is well established that parental rights constitute a liberty interest, and a parent's interest in the accuracy and justice of the decision to terminate his or her parental rights is a commanding one. *Kenneth C. v. Lacie H.*, 286 Neb. 799, 839 N.W.2d 305 (2013). Due process requires that parties at risk of deprivation of liberty interests be provided adequate notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which may be affected by it. *State v. Norman*, 282 Neb. 990, 808 N.W.2d 48 (2012).

In *State v. Norman, supra*, our Supreme Court noted that registration under SORA implicates a liberty interest and that procedures pertaining to SORA must comply with constitutional mandates for procedural due process. Before a defendant can be ordered to be subject to SORA, a court must make a finding, based upon clear and convincing evidence, whether the defendant committed an act of sexual penetration or sexual contact. *State v. Norman, supra*. Since a liberty interest is implicated in the making of this finding, the court must provide procedural due process when it makes this finding after providing the defendant proper notice and a meaningful opportunity to be heard. See *id*.

In *Norman*, the defendant pled no contest to third degree assault and was sentenced to 2 years' probation and 30 days in jail. (The defendant had initially been charged with third degree sexual assault of a child.) The district court also ordered the defendant to register under SORA. SORA

- 267 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

provided that for offenses not sexual in nature, including third degree assault, the court shall have found evidence of sexual penetration or sexual contact. At the sentencing hearing, the district court discussed the recent amendment to SORA that a person convicted of an offense that is not a sex offense may still have to register pursuant to SORA. The district court considered the factual basis used for the conviction and determined the defendant had to register pursuant to SORA. The defendant appealed that portion of his sentence ordering him to register under SORA, on the basis that he was denied due process. The defendant claimed he was denied procedural due process in connection with the order to register under SORA. Our Supreme Court found merit to that argument, because although the defendant had a sentencing hearing, the court did not consider evidence adduced at the hearing and instead made its determination based upon the statements contained in the State's factual basis for the plea. Our Supreme Court reversed the SORA reporting portion of the defendant's sentence and remanded the matter to the district court to make a specific finding, based on all the evidence in the record, including evidence from the hearing, to determine whether the defendant was subject to SORA.

Similar to our Supreme Court in *Norman, supra*, wherein the court remanded for a specific finding as to whether the defendant was subject to SORA after notice and hearing, we do the same here. Because neither the juvenile court nor the parties specifically raised the application of § 43-2933(2) to the proceedings below, and because a liberty interest is at issue, Darneil must be afforded proper notice and a meaningful opportunity to be heard before his contact with Danajah can be terminated pursuant to § 43-2933(2).

The juvenile court did not make a specific factual finding as to the application of § 43-2933(2) to the proceedings before it. Although the judge noted it "continues to be of great concern" that Darneil was convicted of first degree sexual assault, that the victim was Robyn, and that Danajah was conceived as a result, and was troubled by Darneil's report that it was

- 268 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF DANAJAH G. ET AL.
Cite as 23 Neb. App. 244

consensual sex with a minor, this was not a factual finding made upon the presentation of any specific evidence, at least not upon evidence presented at this particular hearing, which is the subject of the present appeal.

Our record reveals that this matter originated on July 18, 2007, when the State filed a petition alleging Danajah was a child within the meaning of § 43-247(3)(a) (Cum. Supp. 2006), with all allegations relating to Robyn, but that Darneil did not file to intervene until December 8, 2009. In an order filed on January 14, 2010, the court granted Darneil's complaint to intervene. We cannot tell from the record before us whether any objection was made to Darneil's intervention, nor whether any hearing took place during which the propriety of Darneil's access to Danajah was considered. On February 16, 2012, Darneil filed a motion for placement of Danajah, which was granted on March 9 over the objection of Robyn and the guardian ad litem. Our record is likewise devoid of any hearing pertaining to this change of placement.

Therefore, because the application of § 43-2933(2) was not specifically addressed by the juvenile court and the parties were not provided an opportunity to be heard on this issue, we remand the matter back to the juvenile court for further proceedings.

Because we remand the matter back to the juvenile court for an evidentiary hearing and specific findings regarding § 43-2933(2) and Darneil's parental rights of access to Danajah, we need not address Darneil's actual assignments of error. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014).

## CONCLUSION

For the reasons stated above, we remand the matter back to the juvenile court for an evidentiary hearing and specific findings regarding § 43-2933(2) and Darneil's parental rights of access to Danajah.

Remanded with directions.